# MARSCHHAUSEN & FITZPATRICK, P.C.
## ATTORNEYS & COUNSELORS AT LAW
73 Heitz Place
Hicksville, New York 11801
(Tel) 516 747-8000 and 516 877-7700
(Fax) 516 747-6439

August 14, 2019

Hon. Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Pryce v. Progressive, et al., Case No. 1:19-cv-01467*

Dear Judge Dearie:

We are counsel to Cecelia Pryce ("Plaintiff"), the plaintiff in the above-referenced case. Pryce respectfully submits this letter in opposition to Progressive Corporation, Progressive Casualty Insurance Company and Progressive Direct Insurance Company's (collectively "Defendants") letter motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Denial of Defendants' motion to dismiss is warranted based upon the plain language of Insurance Law §5102, the controlling precedent from the New York Court of Appeals, the New York Appellate Division First Department and the opinion of the New York State Department of Financial Services, all of which unequivocally demonstrate that Basic Economic Loss coverage is not to exceed "two thousand dollars per month" under §5102(a)(2) and not the arbitrarily determined $2,500 amount wrongfully applied by Defendants herein.

The issue in this case is simple: Can an insurer deduct more than $2,000 per month from Basic Economic Loss when its insureds actual loss of earnings in a given month exceed $2,000? The plain language of §5102(a)(2), as well as holdings of the Court of Appeals and First Department, and the opinion of the Department of Financial Services, clearly cap Basic Economic

Loss at "two thousand dollars per month" with the $2,000 representing the "statutory maximum" and "outer limit." Thus, by the plain language of §5102(a)(2) an insurer cannot deduct more than $2,000 from Basic Economic Loss for wages in any given month.

Accordingly, Defendants' argument that it was proper to deduct $2,500 per month in Basic Economic Loss for each of the five months Plaintiff lost wages, rather than capping the credit at the $2,000 per month maximum amount set forth in Insurance Law §5102(a)(2), warrants denial of Defendants' motion to dismiss.

## Counter-Statement of Facts

Defendants' recitation of the facts herein is not in dispute.

## I. Defendants' Calculation of Basic Economic Loss Violates Plain Language of §5102

Defendants' calculation of Basic Economic Loss in their Motion to Dismiss ignores "the plain language of Insurance Law §5102(a) and (b)" and instead, uses 'sleight of hand' to unlawfully raise the §5102(a)(2) "statutory maximum" "two thousand dollars per month" "outer limit" to $2,500 in an effort to justify its desired result of prematurely exhausting Plaintiff's $50,000 Basic Economic Loss coverage. Defendants' argument replaces the $2,000 Basic Economic Loss 'prescribed ceiling' with $2,500, as follows:

> An insured is entitled to receive 80% of their actual monthly wages, with a prescribed ceiling of $2,000 per month. Monthly wages of an insured who makes more than $2,500 per month are therefore capped at $2,500 in order to ensure that an insured can receive the statutory mandated ceiling of $2,000 in lost wages per month.[1]

Where do the Defendants get the $2,500 figure from for wage Basic Economic Loss after acknowledging the "prescribed ceiling" is only $2,000 per month? Defendants pull the $2,500

---

[1] *See*, Def. Letter Mot. p. 1.

figure from "thin air" to avoid the impact of the Court of Appeals decision in *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451 (1980). The Court of Appeals decision in *Kurcsics* limited Defendants' right to claim a 20% offset under §5102(b)(1) when calculating First Party Benefits for claimants, like Plaintiff, earning in excess of $2,000 per month by requiring the 20% offset be deducted from *gross* lost earnings subject to the $2,000[2] Basic Economic Loss cap. Prior to *Kurcsics*, the 20% was applied directly to the then $1,000 monthly cap, limiting First Party Benefits to $800 per month. After the decision in *Kurcsics*, because Plaintiff earned $3,306.77 per month, she was entitled to receive the same $2,000 per month in First Party Benefits that her Basic Economic Loss coverage was capped at under §5102(a)(2) thus, eliminating the 20% offset Defendants could have claimed prior to the *Kurcsics* decision.

In response to losing the 20% offset, the Defendants artificially increased the Basic Economic Loss cap to $2,500 to manufacture a $500 credit each month, inexplicably ignoring Court of Appeals decisions and the plain language of §5102(a)(2) that the "$2,000 per month" cap in §5102(a)(2) is "unequivocal," represents the "statutory maximum," and the "outer limit" of Basic Economic Loss. *See*, *Kurcsics*, *supra*, 49 N.Y.2d at 457-458 (§5102(a)(2) "states, in unequivocal terms, that this amount shall not exceed "one thousand dollars [now two thousand dollars] per month" and "represents the outer limit of recovery"); *Heitner v. Government Employees Ins. Co.*, 64 N.Y.2d 834, 835 (1985) ("$1,000 [now $2,000] statutory maximum").

The critical flaw in Defendants' rationale is that they are increasing monthly wage Basic Economic Loss from $2,000 to $2,500. If Basic Economic Loss coverage increases to $2,500 then the decision in *Kurcsics* would require Defendants to correspondingly increase First Party

---

[2] At the time that *Kurcsics* was decided the maximum wage Basic Economic Loss was $1,000.00 per month under Ins. Law §5102(a)(2).

Benefits to the same $2,500 per month. Indeed, in capping First Party Benefits at $2,000, the *Kurcsics* Court held that the Legislature's intent was to create a system that contemplated recovery of First Party Benefits which equaled the coverage provided by Basic Economic Loss. Therefore, if this Court were to follow Defendant's logic and find that Basic Economic Loss tacitly increased under §5102(a)(2) to $2,500, then pursuant to *Kurcsics*, Plaintiff here would be entitled to also receive the same increase to $2,500 in First Party Benefits since her income of $3,306.77 reduced by 20% exceeds $2,500. *Kurcsics, supra*, 49 N.Y.2d at 458 ("The 20% deduction should not be treated as taking away what benefits [section 5102(a)(2)] bestows."). In other words, even under Defendants logic, they cannot have it both ways; if their argument is the $2,500 represents an increase in Basic Economic Loss benefits, then the holding in *Kurscics, supra*, would have required Plaintiff's First Party Benefits to increase to the same $2,500 as well; if the argument is that the $2,500 is not Basic Economic Loss then Defendants should not be decreasing the $50,000 in coverage under §5102(a) by it in the first place.

However, Defendants claim that *Kurcsics* prescribes an increase in Basic Economic Loss from $2,000 to $2,500 is nonsensical. Defendants' argue that because the *Kurcsics* Court did not allow the 20% offset to be applied directly to the $2,000 Basic Economic Loss cap, the solution is to just increase the cap to $2,500 to re-create the offset. This is exactly what the *Kurcsics* court found to be incorrect in the first place. Using the same analysis the *Kurcsics* Court used to strike this methodology down the first time, if the Legislature had so intended, §5102(a)(2) would have been written as providing "up to $2,500" in Basic Economic Loss coverage per month and §5102(b)(1) would have been written to limit First Party Benefits recovery to "$2,000 per month." *Kurcsics, supra*, 49 N.Y.2d at 458. Instead, §5102(a)(2) states unequivocally that

Basic Economic Loss is "up to two thousand dollars per month" not $2,500 and holding

otherwise would render the $2,000 limit in §5102(a)(2) irrelevant. *Kurcsics, supra*, 49 N.Y.2d at

458 ("a court will 'not by implication read into a clause of a rule or statute a limitation for which

* * * no sound reason [can be found] and which would render the clause futile.")

Consequently, if not for Defendants' "creative accounting" by unlawfully increasing

Basic Economic Loss from $2,000 to $2,500, Plaintiff would have been entitled to receive the

full $50,000 in Basic Economic Loss coverage, not the $47,500 she received in this case.

### A. Defendants Argument Prevents Recovery of "up to" $50,000 in Basic Economic Loss Coverage

In addition, Defendants' argument makes it impossible for any insured to ever receive the

"up to fifty thousand dollars per person" in Basic Economic Loss provided in §5102(a).

However, not only does §5102(a) contemplate access to Basic Economic Loss coverage of "up

to" $50,000, but *Kurciscs* already interpreted this identical "up to" language in §5102, as

establishing a system that contemplates the ability to receive the full $50,000 in benefits.

Indeed, the Court of Appeals in *Kurcsics* held the Legislature's use of the language "*up to*

one thousand dollars per month" in §5102(a)(2) "contemplates recovery for loss of earnings up

to $1,000 per month and we would be remiss in reading the 20% deduction . . . to limit the

maximum recovery to $800 per month for loss of earnings." *Kurcsics, supra*, 49 N.Y.2d at 458.

By logical analogy, the Legislature's use of the same "*up to*" language to establish maximum

Basic Economic Loss coverage of $50,000 in §5102(a) requires the same conclusion that it too

"contemplates recovery" of the full $50,000 in Basic Economic Loss. Thus, Defendants' claim

of entitlement to a 20% credit in every case and the corresponding increase of Basic Economic

Loss coverage to $2,500 to guaranty a credit for the offset, renders it impossible for an insured to ever receive $50,000 in Basic Economic Loss, a conclusion already rejected by *Kurcsics*.

Further, during Loss Transfer Committee meetings involving the applicability of the 20% offset to workers' compensation payments in excess of $2,500 per month, Lawrence Fuchsberg, the General Counsel of the Insurance Department that authored an Insurance Department Opinion on the application of *Normile v. Allstate*, 87 A.D.2d 721 (3ʳᵈ Dep't 1982) *aff'd* 60 N.Y.2d 1003 (1983), confirmed in an email exchange on this issue that "Post-Kurcsics, if a claimant makes $2500 a month, with the 20% offset, they could receive the full $50,000 in "first party" benefits."[3] Ex. 1. Thus, the Insurance Department similarly agrees with the Court of Appeals that an insured earning $2,500 or more could receive the full $50,000 in Basic Economic Loss coverage. *See also, Arlington Cent. Sch. Dist. v. Progressive*, 150 A.D.3d 472 (1ˢᵗ Dep't 2017) *lv. denied* 31 N.Y.3d 902 (2018) (First Department also affirmed award of full $50,000 in First Party Benefits paid to an insured earning in excess of $2,500 per month).

Therefore, because the Legislature created a system that would allow an insured to receive "up to fifty thousand dollars" in Basic Economic Loss, Defendants argument that it is entitled to a credit for the 20% offset in every case is contrary to the Legislature's intent, the Court of Appeals holding in Kurcsics and the opinion of the Insurance Department.

**B.    Interpretation of *Normile* to Re-Write §5102(a)(2) is Contrary to Law**

Similarly, Defendants reliance on the holding in *Normile* as well as the holdings in *Balanca v. Geico Gen. Ins. Co.*, 13 Misc.3d 90 (App. Term 2006) and *Heitner, supra*, to support the increase of Basic Economic Loss to $2,500 per month, is also misplaced. The holdings in *Normile, Balanca*

---

[3] A copy of Fuchsberg's Email exchange is annexed hereto as Exhibit 1. A copy of his Opinion on which the email exchange is based is annexed hereto as Exhibit 2.

and *Heitner* all stand for the general proposition that the offsets in §5102(b), *to the extent applicable*, are credited towards the no-fault insurer's obligation to pay $50,000 in Basic Economic Loss.[4] This is not in dispute by Plaintiff. However, when the 20% offset is not applicable because lost wages exceed $2,500 as in *Kurcsics*, nothing in the decisions in *Normile*, *Heitner* and *Balanca* provide support for Defendant to rewrite §5102 and increase Basic Economic Loss to $2,500 to manufacture a credit/offset.

As the Court of Appeals made clear in *Kurcsics*, *supra*, because the statutory 20% offset applies to gross earnings but is subject to the same $2,000 per month cap as Basic Economic Loss, the statutory offset contained in §5102(b)(1) is not always applicable, and specifically will not apply when First Party Benefits are capped at $2,000:

> an individual is entitled to actual lost earnings claimed less 20% **unless** such reduced figure exceeds $1,000 [now $2,000] per month, in which case such person would be entitled to a maximum of $1,000 [now $2,000] due to the outer limit imposed" (emphasis added).

*Kurcsics*, *supra*, at 456. In fact, in *Kurcsics*, the insured had lost earnings of $1,400 per month at a time when the Basic Economic Loss monthly cap was $1,000. Because application of the 20% offset to the $1,400 lost earnings resulted in First Party Benefits of $1,120, First Party Benefits were capped at $1,000. Thus, the 20% offset was not applied in *Kurcsics*, and First Party Benefits and Basic Economic Loss capped at the "statutory maximum."

Contrast that with the facts from the Record in *Normile*, *supra*, which confirm that unlike *Kurcsics*, *Normile* had a monthly wage loss of $624, significantly less than the then existing

---

[4] *Balanca*, *supra*, stands for the proposition that the offsets in §5102(b) also apply to Optional Basic Economic Loss coverage to the extent it exists and the first $50,000 in Basic Economic Loss coverage has been exhausted.

$1,000 cap. Ex. 4, p. 55, ¶6.[5] As a result of this $624 monthly wage, *Normile* was entitled to

Basic Economic Loss coverage of $624 over the twenty-seven months he lost wages but was

only entitled to receive First Party Benefit reimbursement of $499.20 ($624 reduced by 20%)

during the twenty-seven months because *Normile's* First Party Benefits were not subject to the

$1,000 (now $2,000) monthly cap as was the case in *Kurcsics*.

|  | The insured received | The carrier received credit for |
|---|---|---|
| Medical benefits: | $34,391 | $34,391 |
| Lost earnings: | $13,594 | $16,992 |
| TOTAL: | $47,985 | $51,383 |

Thus, unlike in *Kurcsics, supra*, where the 20% offset did not apply because First Party

Benefits exceeded the $1,000 (now $2,000) cap, the First Party Benefits in *Normile* of $499.20

per month did not exceed the then applicable $1,000 *Kurcsics* cap. As a result, the insurer in

*Normile* was entitled to credit itself over the twenty-seven month period with the $124.80

difference each month that resulted from the application of the 20% offset to reduce its

obligation to pay Basic Economic Loss.[6]

*Normile* did not hold that an insurer could artificially increase Basic Economic Loss

above $2,000 in order to create a phantom credit for itself, as Defendants do here. Accordingly,

under *Normile* an insurer can apply the 20% statutory offset for lost wages when calculating First

Party Benefits against the $50,000 policy limit for Basic Economic Loss but only to the extent

applicable; i.e., *when First Party Benefits are less than the $2,000 cap* as was the case in

---

[5] As the Record in *Normile* establishes, the insured earned gross wages of $144 per week. By multiplying the weekly gross wage ($144) by the number of weeks in a year (52) and then dividing by the number of months (12), the gross monthly wage totaled $624 (($144 x52) ÷ 12) and First Party Benefits totaled $499.20 ($624-20%). Ex. 4.
[6] In fact, the arbitrator's decision in *Arlington Cent. Sch. Dist., supra*, which the First Department held "was supported by the plain language of Insurance Law §5102(a) and (b)," the arbitrator recognized that §5102 applies differently to a "low earner" who earns gross wages less than the $2,000 cap as in *Normile, supra*, and one that earns more than the $2,000 per month cap, as in *Kurcsics, supra*, and as in the claim herein. *See*, Record on Appeal in *Arlington Central School District, supra*, a copy of which is annexed hereto as Exhibit 3, pp. 26-27.

*Normile*.[7] However, when lost wages increase above $2,500 and First Party Benefits cap at $2,000, such that the offset does not apply, as was the case in *Kurcsics* and *Arlington Cent. Sch. Dist.*, *supra*, Defendants cannot unilaterally increase Basic Economic Loss to $2,500 to create such a credit/offset.

## II.    BEL and First Party Benefits under §5102(a) and (b)

Indeed, by the statute's plain language, an insured is entitled to a total of "up to" $50,000 in Basic Economic Loss *coverage* for necessary medical expenses and actual wages covered during the first three years after the accident up to a maximum capped rate of $2,000 per month. *See*, §5102(a)(1), (2). Similarly, the same insured is entitled to be *reimbursed* "up to" $50,000 in First Party Benefits for medical expenses (*see*, §5102(b)), and either actual monthly wages less the 20% offset or the $2,000 *Kurscics* cap, whichever is less. *See*, §5102(b)(1); *Kurcsics*, *supra*.[8]

Thus, while *coverage* and *reimbursement* for medical expenses exhaust at the same rate under both §5102(a) and §5102(b), wages may not exhaust at the same rate under §5102(a) as they are reimbursed under §5102(b). Specifically, although an insured is entitled to *coverage* for the total loss of earnings capped at $2,000 per month for Basic Economic Loss (§5102(a)(2)), the same insured is only entitled to be reimbursed in an amount equal to their loss of earnings less the 20% offset, up to the $2,000 *Kurcsics* cap (§5102(b)(1); *Kurcsics*, *supra*). The net result is that Basic Economic Loss exhausts quicker than First Party Benefits are paid until the calculation of loss of

---

[7] Or as the Court of Appeals held in *Kurcsics*, the 20% offset applies to actual lost earnings "**unless such reduced figure exceeds $1,000 per month [the statutory cap]**. . ." *Kurcsics*, *supra*, 49 N.Y.2d at 456 (emphasis supplied).

[8] The no-fault carrier is also entitled to additional offsets, not relevant here, for disability, workers' compensation and Medicare benefits to the extent the same are received by the insured (§5102(b)(2)). *See*, *Heitner*, *supra*.

earnings reduced by 20% equals or exceeds $2,000 under *Kurcsics* at which time both First Party Benefits and Basic Economic Loss are capped at $2,000.

In other words, under the plain language of §5102, because, after *Kurcsics*, both First Party Benefits and Basic Economic Loss are subject to the same $2,000 monthly cap, the 20% offset (representing the difference between First Party Benefits and Basic Economic Loss) does not apply once the First Party Benefit obligation reaches the $2,000 cap under *Kurcsics*.

This concept is easily demonstrated using two examples; one with and one without applicability of the $2,000 *Kurcsics* cap on First Party Benefits.

First, an insured with monthly lost earnings of $2,000 would be entitled to receive First Party Benefits equal to lost wages reduced by the 20% offset, or $1,600 ($2,000 – 20%), less than the $2,000 *Kurcsics* cap on First Party Benefits. However, since Basic Economic Loss, by definition, is equal to monthly loss of earnings up to the $2,000 per month cap, Basic Economic Loss would exhaust at the full $2,000 monthly earnings, because the 20% offset does not apply to Basic Economic Loss. *See*, §5102(a)(2); *Kurcsics, supra; Heitner, supra*.

As a result, every month, the insured would receive $1,600 in First Party Benefits but the insurer would credit the full lost earnings of $2,000 against the statutory $50,000 Basic Economic Loss coverage. The $400 difference, deemed a monthly credit, results from the application of the 20% offset contained in §5102(b)(1). Thus, if we assumed no medical expenses, the $50,000 in Basic Economic Loss credited to the insurer would exhaust in twenty-five months (25 months x $2,000 wages = $50,000). At the same time, the insurer would only have paid $40,000 in First Party Benefits wages (25 months x $1,600 = $40,000) at the time Basic Economic Loss is exhausted. Under such facts, the insured would obtain 80% of her loss of income ($40,000 of the

$50,000) and the insurer would receive a credit for the remaining 20% offset or $10,000. The $400 difference/$10,000 offset from application of the 20% offset is similar to the facts the Court was presented with in *Normile*.[9]

By contrast, when monthly lost wages increase such that both Basic Economic Loss and First Party Benefits are subject to the $2,000 cap, as was the case in *Kurcsics*, the 20% offset does not apply. As demonstrated in the example below, even without the offset, the insured is limited to receiving only 66.67% of actual loss of income ($2,000 of the $3,000 income) because of the $2,000 *Kurcsics* cap.

Continuing with the facts in the previous example, if wage loss is $3,000 per month instead of $2,000, actual monthly wage loss reduced by the 20% offset ($3,000-20%=$2,400) now exceeds the $2,000 Kurcsics cap, resulting in First Party Benefits being capped at $2,000. By statute, Basic Economic Loss would still exhaust under §5102(a)(2) at the same capped rate of $2,000 as in example 1. As a result, every month, the insured would receive $2,000 in First Party Benefits and the insurer would be credited with having exhausted the same $2,000 of the statutory $50,000 Basic Economic Loss coverage. Thus, the $50,000 in Basic Economic Loss would exhaust in the same twenty-five months as example 1 (25 x $2,000 = $50,000) at which time the insurer would have paid $50,000 in First Party Benefits for wages (25 x $2,000 = $50,000). Under such facts, the insured would still be limited to only receiving 66.67% of her loss of income during the 25 month period ($50,000 of the $75,000) even though the 20% offset did not apply because of the *Kurcsics* cap.[10]

---

[9] The facts in this example ($1,600 First Party Benefits less than $2,000 *Kurcsics* cap) are similar to the facts in *Normile* ($499.20 First Party Benefits from monthly wage loss of $624 less than the then $1,000 *Kurcsics* cap) thus, explaining why the insurer in *Normile* was entitled to the full 20% credit. *See*, *Normile* Record, Ex. 4, p. 58.

[10] Contrast that with the 80% lost income received by the insured in example 1 after application of the 20% offset.

Therefore, contrary to Defendants argument, when First Party Benefits are capped under *Kurcsics* at $2,000, Basic Economic Loss remains capped under §5102(a)(2) at the same $2,000. There is no available 20% credit to the insurer and no *de facto* increase of Basic Economic Loss to $2,500, because the insured is already limited by the *Kurcsics* cap to receiving only 66.67% of her income. In such a case the insured is entitled to receive the full $50,000 Basic Economic Loss as First Party Benefits. That was the holding in *Kurcsics, supra,* that was the holding in *Arlington Cent. Sch. Dist., supra,* and that is the result Plaintiff was entitled to herein.

### A.    Defendant's Proposed Distinction Seeks a Windfall

Defendants accuse Plaintiff of frustrating the purpose of the 20% offset and creating a windfall to high earners contrary to the express purpose of the statute. However, Defendants intentionally mislead the Court by implying that the purpose of the no-fault statute is to provide the insurance carrier with a monetary benefit.

Quite the contrary, the No-Fault Law was enacted primarily to assure "that every auto accident victim will be compensated for *substantially all* of his economic loss, promptly and without regard to fault (Governor's Memorandum, NY Legis Ann, 1973, p 298; Comment, New York Adopts No-Fault: A Summary and Analysis, 37 Albany L Rev 662, 671)." *State Farm Mut. Auto Ins. Cos. v. Brooks,* 78 A.D.2d 456 (4th Dep't 1981). Thus, contrary to Defendants implication, the 20% offset was designed to prevent an insured from obtaining 100% of their gross income, which would result in a windfall since no-fault benefits are not subject to federal taxation. It was not designed to provide Defendants with a monetary benefit.

However, as in example 2 above, because of the $2,000 cap, Plaintiff in this case was already limited to receiving only 60% of her $3,306 per month gross income ($2,000 ÷ $3,306).

Therefore, as in example 2 above, the 20% offset did not apply because there was never going to be a windfall to Plaintiff since she was already limited to receiving only 60% of her gross income (without the 20% offset) because of the $2,000 statutory cap. Contrast that with the insured in example 1 above, the "low earner" as Defendants deem it, whose income is such that he or she would not fall subject to the statutory cap and thus, would receive 100% of gross income, if not for the applicability of the 20% offset. Obviously, No-Fault's purpose of compensating substantially all of loss income is not served by seeking to impose an additional 20% offset on Plaintiff who is already limited to receiving only 60% of her lost income.

Yet Defendants claim entitlement to an additional $500 per month from coverage from only the "high earners" through the *de facto* increase of Basic Economic Loss. Thus, in example 2 above, Defendants argue Basic Economic Loss exhausts at $2,500 per month, resulting in total exhaustion of benefits in 20 months (20 x $2.500 = $50,000) instead of the 25 months. Instead of receiving $50,000 of $75,000 over the 25 month period, Defendants argue that the insured in example 2 is only entitled to $40,000 of the $75,000 actual loss of earnings, further reducing the insureds loss down to 53% of her income. Contrary to Defendants argument, it is actually the "low earners" and the Defendants/insurers that gain from this illegal scheme which clearly violates the purpose of the no-fault law of reimbursing *substantially all* of Plaintiff's lost income.

**III.    The *Arlington Cent. Sch. Dist.* Decision Confirms Plaintiff's Statutory Analysis**

In fact, in *Arlington Cent. Sch. Dist., supra*, the First Department rejected the same argument now asserted by Defendants that Basic Economic Loss coverage can exhaust at greater than $2,000 per month. The First Department upheld the arbitrator's calculation limiting Progressive's ability, as the no-fault carrier, to deduct wages to the "$2,000 allowable" per month

and upheld the statutory entitlement to $50,000 in total Basic Economic Loss coverage holding the "arbitrator's award calculations were supported by the plain language of Insurance Law §5102(a) and (b)."[11]

In *Arlington Cent. Sch. Dist., supra*, the *Arlington* self-insured school district, as the workers' compensation carrier, was the primary payor of no-fault benefits under §5102(b)(2) for its injured employee, Judy Rogers. Rogers received $2,923.05 per month in wage benefits from *Arlington* (well over the $2,000 cap) and, after *Arlington* had paid over $50,000 in combined medicals and wages as First Party Benefits to Rogers, it filed arbitration to recover the full $50,000 in Basic Economic Loss from Progressive Insurance Company, as the liable tortfeasor, under Insurance Law §5105.

*Arlington*'s argument, much like Plaintiff's argument here, was that it was entitled to the full $50,000 in Basic Economic Loss because both Basic Economic Loss and First Party Benefits were subject to the $2,000 cap, therefore, the 20% offset was not applicable to reduce First Party Benefits. *See,* Ex. 3, pp. 46-50, 128-131.[12]  In opposition, Progressive argued, as they do here, that it was entitled to credit the 20% statutory offset to Basic Economic Loss above the $2,000 statutory cap contained in §5102(a)(2) and thus, it reduced the amount of First Party Benefits recoverable to under $50,000.  In rejecting Progressive's argument, the arbitrator held the *Normile* rationale

---

[11] As the Briefs submitted to the First Department and the Motion papers submitted to the Court of Appeals make clear, the "award calculations" which the First Department held "were supported by the plain language of Insurance Law §5102(a) and (b)" and which resulted in denial of leave to appeal by the Court of Appeals, were the exact same calculations relied on by Plaintiff herein. Copies of the Briefs submitted to the Appellate Division First Department and the Motion papers submitted to the Court of Appeals are annexed hereto as Ex. 5 through 9.

[12] In *Arlington*, Rogers received $2,923.05 per month in workers' compensation benefits which under Workers Compensation Law §15, represented 66.67% of her actual monthly loss of income of $4,384.60. Thus, *Arlington* successfully argued that because Rogers income far exceeded $2,500 per month, both Basic Economic Loss and First Party Benefits were capped at $2,000, there was no offset to be applied under §5102(b)(1) and, therefore, as a matter of law it was entitled to receive the full $50,000 in loss transfer that it paid Rogers in lieu of First Party Benefits. Ex. 3, pp. 46-50, 128-131.

espoused by Progressive only applied in cases where the gross earnings were below the $2,000 Basic Economic Loss cap and that, in the case of Rogers who earned more than $2,500 per month, she was absolutely entitled to First Party Benefits of the entire $50,000. *See,* Ex. 3, pp. 26-27. On appeal, the First Department unanimously held that the "arbitrator's award calculations were supported by the plain language of Insurance Law §5102(a) and (b)" under *Kurcsics, supra. Arlington Cent. Sch. Dist., supra,* 150 A.D.3d at 472. Progressive's subsequent motion for leave to appeal to the Court of Appeals was denied. *Arlington Cent. Sch. Dist., supra,* 31 N.Y.3d at 902.

## A.    The Instant Action

Applying the settled case law to the case at bar, because Plaintiff's lost earnings exceeded $2,500 per month, it is clear the 20% offset/credit did not apply. *See, Kurcsics, supra,* 49 N.Y.2d at 456. In the instant claim, Plaintiff had medical expenses of $36,736.71. Class Action Complaint (Mar. 13, 2019) (("Complaint"), ECF No. 1, ¶19. Plaintiff's also had loss of earnings of an average of $3,306 per month. *Id.* Thus, as in the second example above, Plaintiff's actual monthly wage loss reduced by the 20% offset ($3,306-20%=$2,644) exceeded the $2,000 *Kurcsics* cap, resulting in First Party Benefits being capped at $2,000. At the same time, Plaintiff's Basic Economic Loss should have exhausted under §5102(a)(2) at the same capped rate of $2,000. As a result, Plaintiff was entitled to receive $2,000 in First Party Benefits each month and Defendants should have deducted the same $2,000 per month from the statutory $50,000 Basic Economic Loss coverage. Consequently, had Defendants followed the plain language of §5102 and the established law in *Kurcsics* the $50,000 in Basic Economic Loss would have exhausted in the seventh month (7 x $2,000 = $14,000 + $36,736.71) at which time Defendants would have been credited with the disability benefits Plaintiff received of $3,502 and would have paid an additional $9,761.29 in

First Party Benefits for wages[13] and a total of $50,000 in First Party Benefits. Thus, over the seven-month period, Plaintiff would have received $13,263.29 of the $23,142 she lost in wages over that period, or approximately 57% of her lost wages over the seven-month period.

Instead, Defendants inexplicably increased the statutory deduction for Basic Economic Loss to $2,500. As a result, although medical benefits remained at $36,736.71 and Plaintiff received $2,000 per month in First Party Benefits, Defendants deducted $2,500 from the statutory $50,000 Basic Economic Loss coverage each month. Therefore, instead of receiving $13,263.29 of the $23,142 she had in lost wages ($2,000 per month over 7 months), Plaintiff received only $2,000 per month over five months, or $10,000 (including the $3,502 disability benefits she received) of her $23,142 in lost wages (43%), when Defendants declared her Basic Economic Loss coverage had exhausted.

Accordingly, contrary to Defendants' claim, because Plaintiff suffered loss of earnings that exceeded $2,500 per month, the credit or offset in §5102(b)(1) did not apply, and Defendants were limited by statute to deducting $2,000 per month from Basic Economic Loss for wages.[14] As such,

---

[13] Because medical benefits paid as First Party Benefits totaled $36,736.71, Plaintiff was entitled to receive the remaining coverage of $13,263.29 as First Party Benefits paid for her wage loss. Hence, Basic Economic Loss should have exhausted in the seventh month at which time Defendants would have been credited with the $3,502 Plaintiff received in disability benefits and should have paid $9,761.29 in lost wages.

[14] By statutory design, Defendants are entitled to a 20% offset against gross wages in every case when calculating First Party Benefits but their entitlement to take credit for the 20% offset is subject to the $2,000 *Kurcsics* cap in the same way that the insured's entitlement to be reimbursed for loss of income is also subject to the same $2,000 cap. In other words, here Plaintiff's entitlement to wages would be $2,644 ($3,306 – 20%) but for the $2,000 cap. Thus, in this case, and all similar cases, the Plaintiff is receiving less than 80% of her wages and the carrier is getting a greater than 20% offset because of the $2,000 cap. Therefore, the issue is not whether the carrier is entitled to a 20% offset but whether it is entitled to take a credit for the offset beyond the $2,000 statutory cap. Whether under *Kurcsics* or *Normile*, because an injured claimant is not permitted to collect the full 80% of his lost wages as a result of the $2,000 cap, the carrier is likewise prevented from applying the 20% offset/credit beyond the $2,000 monthly wage Basic Economic Loss cap.

Plaintiff was entitled to receive the full $50,000 in First Party Benefits as in *Arlington Cent. Sch. Dist., supra*, not the $47,500 in coverage provided by Defendants to Plaintiff herein.

**B.     The *Corey* and *Skubis* Decisions are Contrary to the Plain Language of §5102**

Defendants' claim that *Arlington Cent. Sch. Dist.* is inapposite and that instead the decisions in *Skubis v. Nationwide Prop. & Cas. Ins. Co.*, 303 A.D.2d 984 (4th Dep't 2003) and *Corey v. USAA Gen. Ins. Co.*, Index No. 80111/2011 (Sup. Ct. Erie Co. 2012) are instructive is belied by a comparison of the arguments offered in the respective briefs and records in each case.

For example, the holdings in *Skubis, supra*, and *Corey, supra*, adopted the unopposed arguments raised by the defendant insurers that *Normile* supports the conclusion that an insurer can unilaterally reduce Basic Economic Loss by $2,500 per month notwithstanding the unequivocal language of §5102(a)(2) limiting Basic Economic Loss to "two thousand dollars per month." However, the Record and Briefs in each case show neither the *Skubis* plaintiff nor the *Corey* plaintiff understood the arguments related to the increase of Basic Economic Loss to $2,500 and clearly the parties did not raise a single legal argument even remotely related to the issues raised herein and the Court did not consider or discuss the issues raised herein.[15] "By virtue of the fact that it apparently did not consider (and certainly did not discuss) the central arguments presented here, its persuasive power is limited and is not enough to control this case." *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 322 (S.D.N.Y. 2013) *aff'd* 794 F.3d 272 (2d Cir. 2015).

---

[15] A copy of the *entire* Record on Appeal in *Skubis* is annexed hereto as Exhibit 10. A copy of the Brief of Plaintiff-Appellant in *Skubis* is annexed hereto as Exhibit 11. A copy of the Brief of Defendant-Respondent in *Skubis* is annexed hereto as Exhibit 12. A copy of the Defendant's Memorandum of Law in *Corey* is annexed hereto as Exhibit 13. A copy of the Plaintiff's Memorandum of Law in *Corey* is annexed hereto as Exhibit 14. A copy of the Defendant's Reply Memorandum of Law in *Corey* is annexed hereto as Exhibit 15.

The *Corey* decision even acknowledges that the Court and the *Corey* plaintiffs' did not

understand §5102 and specifically did not understand the interplay between the $2,000 cap in

§5102(a)(2) and the 20% offset in §5102(b)(1) which are the crux of this case.

> More to the point of this case, ***this Court, like plaintiff, is not
> crystal clear*** concerning why, in terms of the propriety of applying
> the 20% tax reduction factor as an offset against it (as opposed to
> against the gross lost wages), the $2000 monthly cap or allowance
> of current Insurance Law §5102(a)(2) (the subject of *Kurcsics*)
> should be treated differently from the $50,000 cap or allowance of
> current section 5102(a) (the subject of *Normile*) (emphasis added).

*Corey, supra; see,* Def. Letter Mot., Ex. B at 18. Remarkably, as a result of the Court's own

admission that it did not understand this area of law, the *Corey* decision can be of little guidance

on the applicability of the 20% offset to First Party Benefits.[16]

Contrast that with the briefs and record in *Arlington Cent. Sch. Dist.* (Ex. 5-9) which

confirm that the First Department and Court of Appeals were presented with the exact arguments

set forth here; where the First Department relied on *Kurcsics* to reject the same attempt herein to

apply a 20% offset to reduce Basic Economic Loss coverage where wage loss exceeds $2,500

per month and instead held the insured was entitled to the full $50,000, contrary to *Skubis*,

holding that the "arbitrator's award calculations were supported by the plain language of

Insurance Law §5102(a) and (b)." *Arlington Cent. Sch. Dist., supra*, 150 A.D.3d 472.[17]

---

[16] The Trial Court decision in *Corey* also placed great weight on the Insurance Department decision from 2003 (Ex. 1) which addressed a no-fault carrier's obligation to reimburse a workers' compensation carrier for benefits paid in lieu of First Party Benefits. *See,* Def. Letter Mot., Ex. B. However, as previously set forth, the Insurance Department has since clarified this decision by confirming that contrary to the *Corey* court's conclusion, "Post-*Kurcsics*, if a claimant makes $2500 a month, with the 20% offset, they could receive the full $50,000 in "first party" benefits." *See,* Ex. 1.

[17] In fact, a review of the arguments submitted in plaintiff's Memoranda of Law in Opposition to defendants' Motion to Dismiss in *Corey* as well as Appellant's Brief in the Appeal in *Skubis* highlights just how little plaintiff's counsel in <u>Corey</u> understood how the 20% offset applied. *See,* Ex. 11, 14.

Thus, to the extent that *Corey* and *Skubis* stand for the proposition that an insurer can deduct $2,500 per month instead of the $2,000 per month unequivocally set forth in §5102(a)(2), *Corey* and *Skubis* are just plain wrong.

### C. *Regulation 11 NYCRR §65-3.19*

Lastly, Defendants mislead this Court by reproducing only a portion of a chart found in 11 NYCRR §65-3.19(f) and offering it to this Court as a purported example of how to calculate first party benefits when the insured earns more than $2,500 per month and when the insured earns less than $2,500 per month.[18] No such chart exists. The portion of the chart Defendants refer to is actually a chart providing for the calculation of First Party Benefits affected by wage continuation plans and *taxable* disability benefits. In any event, this "chart" only calculates First Party Benefits, it does not in any way support Defendants *de facto* increase of the deduction to Basic Economic Loss to $2,500.

### IV. Dismissal is Premature as Against Progressive Corporation and Progressive Direct Insurance Company

Progressive acts through several discrete corporations.[19] It appears that more than one such entity may sell no-fault auto policies in this state.[20] Moreover, it is not certain that the Progressive entity which sells a policy is the same entity that administers a policyholder's claim, or the entity which established the scheme at issue in this case. Yet the breach of contract, and the statutory misconduct described by the complaint, appear to be practiced in administration of

---

[18] The full chart referenced in 11 NYCRR §65-3.19(f) is annexed hereto as Exhibit 16.

[19] See Exhibit 21 to Progressive's 2018 SEC Form 10-k, attached hereto as Exhibit 17.

[20] See, *e.g.*, page 4 of the February 29, 2016 Delaware Department of Insurance Market Conduct Examination Report, attached hereto as Exhibit 18. While that report is restricted to Delaware, it is likely that similar activity occurs in New York.

all of Progressive's New York no-fault policies. It is therefore entirely possible that multiple

Progressive entities are liable to the class. As paragraph 12 of the complaint points out, only

discovery can resolve which of these Progressive defendants are culpable.

It is well-settled that "[a]pplicable provisions of the Insurance Law are 'deemed to [be]

part of [an] insurance contract as though written into it.'" *Trizzano v. Allstate Ins. Co.*, 7 A.D.3d

783, 785 (2nd Dep't 2004) *citing Salzman v. Prudential Ins. Co.*, 296 N.Y. 273, 277 (1947).

Here, without the insurance contract, there is no way to determine whether Defendants'

Progressive Corporation and Progressive Direct Insurance Company were also parties to the

insurance contract especially where there is no dispute that Defendants all violate the insurance

law in the same manner. *See generally, Kollar v. Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS

118603 (Dist. Conn. 2017) (dismissal denied where Court cannot determine from Record

whether affiliate is also a party to insurance contract).

Likewise, since the underpaying of claims has been held sufficient to set forth a violation

of GBL §349 under a policy of insurance, it would also be premature to dismiss the GBL §349

claims against Defendants' Progressive Corporation and Progressive Direct Insurance Company

until the insurance contracts can be provided by Defendants to determine the identity of the

parties to the insurance contract. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2nd

Cir. 1992) *aff'g in part*, 756 F.Supp. 732 (S.D.N.Y. 1990); *Milligan v. Geico Gen. Ins. Co.*, 2017

U.S.Dist. LEXIS 110800 (E.D.N.Y. 2017).

Progressive's motion to dismiss correctly notes that "[T]he complaint must allege that the

defendant engaged in a deceptive act or practice, that the challenged act or practice was

consumer-oriented and that the plaintiff suffered an injury as a result of the deceptive act or

practice".[21] Progressive assumes that only the entity which issued the policy can be so engaged.[22] That is not necessarily so, as discussed above, and the complaint clearly alleges that all of the Progressive defendants may be liable for the consumer-oriented deception. Thus, absent discovery and the provision of the applicable insurance policy the instant motion to dismiss should be denied as premature.

## Conclusion

In sum, and contrary to Defendants' unilateral interpretation of the "up to two thousand dollars per month" language contained in §5102(a)(2) as permitting a monthly reduction of $2,500, Defendants' unilateral credit of an additional $500 per month for each of the seven months Plaintiff received First Party Benefits which resulted in the premature exhaustion of Plaintiff's Basic Economic Loss policy limits after payment of $46,500 instead of $50,000, was contrary to law. Therefore, Defendants clearly violated the provisions of Insurance Law §5102 in calculating Basic Economic Loss and consequently, its motion to dismiss this action and, in particular, Plaintiff's first claim, must be denied in its entirety.

Dated: Hicksville, New York
August 16, 2019

Respectfully submitted,

Marschhausen & Fitzpatrick, P.C.

Kevin P. Fitzpatrick, Esq.

---

[21] *Ural v. Encompass Ins. Co. of Am.*, 97 A.D.3d 562, 564 (2d Dep't 2012), cited at page 12 of Progressive's motion.
[22] "The only allegations of deception that Plaintiff makes relate to Progressive's processing and payment of Plaintiffs claim under the Policy, which, as noted above, was issued by Progressive Casualty Insurance Company." *Id.*

cc:     Kymberly Kochis, Esq.
        Eversheds Sutherland (US) LLP
        1114 Avenue of the Americas, 40th Floor
        New York, New York 10036

        John K. Weston, Esq.
        Sacks Weston Diamond, LLC
        1845 Walnut Street, Suite 1600
        Philadelphia, PA 19103