FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ NOV 15 2019 ★
BROOKLYN OFFICE

RD 11/05/19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

CECELIA PRYCE suing individually on her
own behalf and representatively on behalf of
a class of plaintiffs similarly situated,

        Plaintiff,

  - against -

PROGRESSIVE CORPORATION;
PROGRESSIVE CASUALTY INSURANCE
COMPANY; and PROGRESSIVE DIRECT
INSURANCE COMPANY,

        Defendants.

------------------------------------------------------------ x

**MEMORANDUM & ORDER**

19-CV-1467 (RJD)(VMS)

DEARIE, District Judge.

        Plaintiff Cecelia Pryce brings a class action lawsuit against Defendants Progressive Corporation, Progressive Casualty Insurance Company and Progressive Direct Insurance Company (collectively "Progressive" or "Defendants") seeking damages and declaratory and injunctive relief for Progressive's alleged violations of the New York Insurance Law, New York General Business Law § 349, and breach of Plaintiff's insurance policy. Plaintiff claims that Defendant Progressive Casualty Insurance Company, Plaintiff's motor vehicle insurance carrier, made calculations of her Basic Economic Loss and First Party Benefits that resulted in her receiving less First Party Benefits than that prescribed by the Comprehensive Motor Vehicle Reparations Act, N.Y. Ins. Law §§ 5101-09 ("No-Fault Statute"). Defendants move to dismiss, arguing that Plaintiff fails to state a claim because Progressive's calculation of Plaintiff's maximum First Party Benefits was proper, and that, at a minimum, the Court should dismiss the

claims against Defendants Progressive Corporation and Defendant Progressive Direct Insurance Company because the Complaint does not allege any insurance contract or other agreement under which those Defendants owed a duty to Plaintiff. For the reasons that follow, Defendants' motion to dismiss is DENIED.

## BACKGROUND

The facts are not in dispute. On or about July 7, 2015, Plaintiff was injured in a car accident. At the time, Plaintiff had a motor vehicle insurance policy with Defendant Progressive Casualty Insurance Company which, in accordance with the requirements of the No-Fault Statute, provided coverage of up to $50,000 in Basic Economic Loss. N.Y. Ins. Law § 5102(a). Basic Economic Loss equals the sum of medical expenses incurred, "loss of earnings . . . up to two thousand dollars per month," and other expenses not relevant to this case. Id. The No-Fault Statute, however, does not require Defendants to pay Plaintiff for her Basic Economic Loss; it requires Defendants to pay Plaintiff First Party Benefits. Id. § 5103. First Party Benefits are "payments to reimburse a person for basic economic loss . . . less: (1) Twenty percent of lost earnings computed pursuant to [§ 5102(a)(2)];" and (2) any government disability benefit received. Id. § 5102(b).

Following her accident, Plaintiff submitted a claim for First Party Benefits, which included a claim for $3,306.77 in lost monthly wages. Defendants paid her $7,268.32 for five months of lost wages and $36,736.71 for medical expenses, totaling $44,005.03. Plaintiff also received $3,502 in state disability benefits. Defendants advised Plaintiff that such benefits exhausted her $50,000 coverage maximum. As Defendants interpreted the statutorily prescribed formula for calculating First Party Benefits, Defendants subtracted from her $50,000 maximum

2

First Party Benefits $3,502 in state disability benefits and 20% of her lost wages over five months at $2,500 per month—$500 per month for 5 months. Plaintiff claims that Defendants violated the No-Fault Statute by offsetting a portion of her wages from her maximum First Party Benefits.

## DISCUSSION

At the motion to dismiss stage, courts must decide whether a plaintiff has plausibly pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Deciding this motion requires this Court to apply Kurcsics v. Merchants Mut. Ins. Co., 49 N.Y.2d 451 (1980). In Kurcsics, the plaintiff claimed $1,400 in lost monthly wages at a time when the No-Fault Statute capped the lost wages benefits at $1,000 per month. Kurcsics, 49 N.Y.2d at 454-55. The insurance provider in Kurcsics, however, paid the insured individual only $800 per month in lost wages benefits on the theory that the 20% lost wages offset required a reduction in the maximum lost wages benefit from $1,000 per month to $800 per month. Id. at 455. The plaintiff in Kurcsics argued that the statutory scheme covered insured individuals to their claimed lost earnings less 20%, except when the resulting figure exceeded the statutory maximum, in which case the insured individual would receive the statutory maximum. Id. at 456-57.

The Court of Appeals agreed with the plaintiff, holding that "an individual is entitled to actual lost earnings claimed less 20%, unless such reduced figure exceeds $1,000 [now $2,000]

3

per month, in which case such person would be entitled to a maximum of $1,000 [now $2,000] due to the outer net limit imposed [by the No-Fault Statute]." Id. In effect, Kurcsics limited an insured individual's lost wage benefits to 80% of the individual's claimed lost wages or the statutory maximum, whichever is lower. As the Court of Appeals noted, the lost wages offset provides for an insured individual to receive lost wage benefits that better approximate the actual loss an individual suffers because the wages the insured individual did not receive would have been taxed whereas the lost wages benefits are not taxed. Thus, pursuant to the No-Fault Statute, the insured individual does not realize a windfall and the insurance provider does not have to pay out more than a close approximation of the post-tax wages the insured individual lost. Id. at 457.

Defendants make a two-part argument for why Plaintiff does not state a claim. First, Defendants argue that Normille v. Allstate Ins. Co., 87 A.D.2d 721 (3d Dep't 1982), requires that they offset 20% of Plaintiff's claimed lost wages from her maximum First Party Benefits in addition to limiting Plaintiff to the statutory cap of $2,000 in monthly lost wage benefits, even though the lost wage benefits statutory cap operates to award Plaintiff less than 80% of her claimed lost monthly wages of $3,306.77. Defendants' Letter Motion to Dismiss Plaintiff Cecilia Pryce's Class Action Complaint, ECF No. 15 at 7 ("Letter Motion"). Defendants argue that they must offset 20% of Plaintiff's claimed lost wages from her First Party Benefits maximum because they would have done so for an individual who claimed less than the statutory cap of $2,000 in lost monthly wages. Defendants curiously suggest that to prohibit them from offsetting 20% of the claimed lost wages from the maximum First Party Benefits of a "high-earner"[1] such as Plaintiff, while requiring them to make the same offset for an insured individual who is a

---

[1] Defendants define a "high-earner" as "those who earn more than $2,000 per month," and a "low-earner" as those "who earn $2,000 or less per month." Letter Motion at 9.

"low-earner" lets the "high-earner" escape with a windfall.

Second, Defendants argue that Kurcsics required them to calculate Plaintiff's 20% lost wages offset using a monthly wage of $2,500 so that Plaintiff would still receive the statutorily prescribed ceiling of $2,000 per month in lost wages benefits—that is, 80% of $2,500 is $2,000. See Letter Motion at 5-6. Defendants' interpretation of the holding in Kurcsics extrapolates from a footnote where the Court of Appeals explained that in order "[t]o recover the maximum of $1,000 [now $2,000] per month, a claimant would be required to demonstrate that he or she suffered loss of earnings . . . in the amount of $1,250 [now $2,500] or more . . . because the 20% deduction would operate as to reduce the gross loss of earnings claimed." See Kurcsics, 49 N.Y.2d at 458, n.3; Defendants' Reply to Plaintiff Cecilia Pryce's Opposition, ECF No. 16, at 3.

This Court disagrees with Defendants. The No-Fault Statute does not operate to let Defendants benefit twice, once by limiting Plaintiff's lost wages benefits to $2,000 per month and again by permitting Defendant to offset $500 per month from Plaintiff's maximum First Party Benefits. The Kurcsics holding is limited to prescribing how to calculate the lost wages benefit and possible lost wages offset components of Plaintiff's maximum First Part Benefits. Properly applied, Kurcsics requires Defendants to calculate 80% of Plaintiff's claimed lost monthly wage of $3,306.77, which equals $2,645.42. Because this number is higher than the statutory monthly lost wages benefits cap of $2,000, Kurcsics fixes Plaintiff's lost wages benefits at the statutory maximum of $2,000 per month. Regarding Footnote 3 in Kurcsics, it does not, as Defendants argue, permit Defendants to offset $500 per month from the maximum First Party Benefits of individuals who make $2,500 or more per month. Footnote 3 simply illustrates that after making the required calculations, all individuals who claim less than $2,500 in monthly lost wages will receive 80% of their claimed lost monthly wages as benefits, and all who claim

$2,500 or more will receive the statutory maximum.

Defendants' reliance on Normille is also misplaced. Normille does not require Defendants to offset a portion of Plaintiff's claimed lost wages from her maximum First Party Benefits, and Defendants are wrong when they assert that allowing Plaintiff to recover 100% of the statutory cap on lost wages benefits amounts to a "windfall" available only to the fortunate few. See Letter Motion at 10. The factual difference between Normille and this case illustrates why Defendants' fear—that "high-earners" could benefit where "low-earners" cannot unless Defendants offset 20% of a "high-earner[s]" lost wages from her maximum First Party Benefits—is unfounded. In Normille, the plaintiff's claimed lost monthly wages were less than the statutory maximum for lost wage benefits. Letter in Opposition To Defendants Letter Motion To Dismiss, ECF No. 17, Exhibit 4, p. 55. So, after calculating 80% of the plaintiff's claimed lost wages, the resulting number, of course, was less than the statutory maximum for lost wage benefits. Thus, under Kurcsics, the plaintiff in Normille was entitled to lost wage benefits totaling only 80% of his lost wages. In contrast, here, after calculating 80% of Plaintiff's claimed lost monthly wages, the resulting number is still more than the statutory maximum for lost wage benefits. Thus, Plaintiff could receive only the statutory maximum in lost wages benefits, which equals approximately 60% of her lost wages.

While Defendants are right that pursuant to Kurcsics, all else being equal, Plaintiff could receive the maximum $50,000 in First Party Benefits and a "low-earner" could not, that is no windfall for Plaintiff; the First Party Benefits she receives would be a lower percentage of her claimed loss than her "low-earner" counterpart's. Thus, Defendants' purported concern for the "low-earner" is unfounded. Nor does prohibiting Defendants from offsetting 20% of Plaintiff's claimed lost wages from her maximum First Party Benefits visit on Defendants the supposed

6

"financial hardship" that the 20% lost wages offset saves insurance providers from otherwise bearing. See Kurcsics, 49 N.Y.2d at 457; Letter Motion at 9. For if Plaintiff is going to receive a lower percentage of her claimed loss in First Party Benefits than her "low-earner" counterpart would, the flip-side of the same coin is that Defendants will enjoy the benefit of paying Plaintiff a lower percentage of her claimed loss in First Party Benefits than they would have to pay her "low-earner" counterpart.

In circumstances such as these where the Plaintiff claims $2,500 per month or more in lost earnings, Defendants cannot offset 20% of Plaintiff's claimed lost wages from her maximum First Party Benefits because the $2,000 statutory maximum in lost wages benefits already limits Plaintiff to receiving less than the maximum 80% of her claimed lost wages envisioned by the Legislature. Defendants did just that: offset a portion of her claimed lost wages totaling $2,500 from her maximum First Party Benefits. After subtracting $3,502 from Plaintiff's maximum First Party Benefits for Plaintiff's disability benefits but not offsetting a portion of Plaintiff's claimed lost wages, the No-Fault Statute requires Defendants to pay Plaintiff up to $46,498 in First Party Benefits. Defendants only paid Plaintiff $44,005.03 in First Party Benefits. Therefore, Plaintiff sufficiently alleged facts to support her claims.

Given that Plaintiff has sufficiently alleged facts to support her claims, it would be premature to dismiss the case against Defendants Progressive Corporation and Progressive Direct Insurance because discovery may show that these other entities were also parties to Plaintiff's insurance contract or were involved in the administration of Plaintiff's insurance claims. Moreover, since Plaintiff alleges that the statutory misconduct at issue was practiced in the administration of all of Progressive's New York no-fault policies, discovery may show that multiple Progressive entities are liable to the class. Accordingly, Defendants' motion to dismiss

is denied in its entirety.

SO ORDERED.

Dated: November 15, 2019
Brooklyn, NY

s/RJD
Raymond J. Dearie
United States District Judge