# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 19-CV-01467 (RJD) (RER)

---

CECELIA PRYCE, SUING INDIVIDUALLY ON HER OWN BEHALF AND REPRESENTATIVELY ON BEHALF OF A CLASS OF PLAINTIFFS SIMILARLY SITUATED

Plaintiff,

VERSUS

PROGRESSIVE CORPORATION, *ET AL.*,

Defendants.

---

**REPORT & RECOMMENDATION**

February 17, 2022

---

**TO THE HONORABLE RAYMOND J. DEARIE**
**SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Cecelia Pryce ("Pryce" or "Plaintiff") brings this action on behalf of herself and similarly situated individuals against defendants, the Progressive Corporation, Progressive Casualty Insurance Company ("Progressive Casualty"), and Progressive Direct Insurance Company ("Progressive Direct") (collectively "Progressive" or "Defendants") seeking (1) declaratory relief; (2) injunctive relief; (3) recovery of overdue benefits and interest due to Defendants' alleged miscalculation of automobile insurance policy benefits under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. L. § 5101 *et seq.*; (4) damages for violations of New York General Business Law ("GBL") § 349 in connection with that miscalculation; and (5)

1

damages for breach of contract. (ECF No. 1 ("Compl.") ¶¶ 1–2, 28, 33, 39, 40–44); ECF No. 34 ("Am. Compl.") ¶¶ 1–2, 28, 33, 39, 40–44). Plaintiff has moved pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify a class of:

> All "Eligible Injured Persons" as that term is defined by 11 NYCRR §§ 65-1.1 – 65-1.3 covered under a policy of insurance issued by PROGRESSIVE CORPORATION, PROGRESSIVE CASUALTY INSURANCE COMPANY, or PROGRESSIVE DIRECT INSURANCE COMPANY and subject to the provisions of Insurance Law § 5102 who had actual monthly wages in excess of two thousand dollars per month, who have submitted First Party Benefit claims to, and received payment from, one or more of these defendants for First Party Benefits that included claims for lost wages, and which, after paying at least one month of First Party wage benefits, defendants claim coverage had fully exhausted on or after March 13, 2013. Excluded from the Class are the defendant companies; any entity that has a controlling interest in one or more of the defendant companies; current or former directors, officers and counsel of the defendant companies; and any class member who has already received full compensation of his or her lost wages under the applicable insurance policy."

(ECF No. 41 ("Mot. for Class Cert.") ¶ 1). Your Honor has referred the motion to me for a report and recommendation. (Order dated 1/8/2021).

After carefully reviewing the record and for the reasons set forth herein, I respectfully recommend that the Plaintiff's motion be granted in part. The Court should (1) dismiss for lack of standing the claims as against Progressive Corporation and Progressive Direct; (2) deny class certification as to Plaintiff's claims for overdue benefits and interest under N.Y. Ins. Law § 5106; (3) grant class certification as to Plaintiff's breach of contract and N.Y. Gen. Bus. Law § 349 claims for the revised class described herein; (4) appoint Plaintiff as the class representative and Kevin P. Fitzpatrick of Marschhausen & Fitzpatrick, P.C. and John K. Weston of Sacks Weston, LLC as class counsel; and (5) direct the parties to submit to the Court within thirty days proposed forms and schedules for providing notice to the class.

# **BACKGROUND**

I. Facts

Although Your Honor is familiar with the factual background of this case, the following is provided to aid in understanding the motion and to relay new information gathered and submitted by the parties in support of their respective positions.

On or about July 7, 2015, Plaintiff was injured in a car accident. (Am. Compl. ¶ 17). At the time, Plaintiff was covered by an automobile insurance policy underwritten and administered by Progressive Casualty. (*See* Am. Compl. ¶ 16; ECF No. 39-4 ("Policy") at 3; ECF No. 39-3 ("Denny Decl.") ¶ 24; ECF No. 41-4 ("Def's Interrog. Resps.") ¶ 4). In accordance with the requirements of New York's No-Fault statute, the policy provided coverage of up to $50,000 in "basic economic loss" ("Mandatory Personal Injury Protection Coverage" or "PIP coverage"). N.Y. Ins. Law § 5102(a); *see also* (Policy at 4, 11) ███████████████████████████████ ███████████████. Basic economic loss is defined as the sum of medical expenses incurred, "loss of earnings . . . up to two thousand dollars per month," and other expenses not relevant to this case. N.Y. Ins. Law § 5102(a). In line with the statute, ██████████████████ ████████████████████████████. (Policy at 4). The No-Fault statute requires that insurers pay covered individuals "first party benefits." N.Y. Ins. Law § 5103. First party benefits are "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less (1) Twenty percent of lost earnings computed pursuant to [§ 5102(a)(2)];" and (2) any government disability benefit received. *Id.* § 5102(b).

After her accident, Plaintiff submitted a claim for first party benefits, which included a claim for $3,306.77 per month for lost wages. (Am. Compl. ¶ 18). ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████ (Denny Decl. ¶¶ 25–26). Progressive credited that sum

toward the exhaustion of Plaintiff's coverage. Plaintiff also received $3,502 in state disability

benefits (Am. Compl. ¶ 19), and ████████████████████████████████ both of which

were also credited toward the exhaustion of her coverage. (Denny Decl. ¶¶ 23, 25–27).[1] █

██████████████████████████████████████████████████

███████████████████████████ (*Id.* ¶ 26). █████████████████

██████████████████████████████████████████████████

████████████████████████ (*Id.* ¶ 27).

█████████████████████████████████ (Denny Decl. ¶ 30; ECF No. 39-5

("Progressive Claim Note") at 3; ECF No. 39-6 ("Return to Work Letter") at 3–4). ████████

██████████████████████████████████████████████████

████████████. (Denny Decl. ¶ 30.). ████████████████████████

████████████████████████ (*Id.* ¶ 31; Progressive Claim Note at 3).

        In March 2016, Progressive informed Plaintiff that her no-fault benefits were terminated

because she had exhausted her PIP coverage. (Am. Compl. ¶ 20; ECF No. 36 ("Am. Ans.") ¶ 20).

According to Defendants, █████████████████████████████████████████████

█████████████████████████████████████████████████████ (Denny Decl.

¶ 33).

---

[1] "Plaintiff's complaint alleges that "defendants paid a total of **$36,736.71** in first party medical benefits, $7,268.32 in First party wage benefits, and took a credit of $3,502.00 in New York State Disability benefits for a total paid of first party benefits of $47,507.03." (Am. Compl. ¶ 19). While the higher alleged first party medical benefit includes an additional $200 ██████████████████████████████, her Complaint does not account for ████████████████████████. (*See* Denny Decl. ¶ 25).

████████████████████

In addition to Mandatory PIP coverage of $50,000, insured individuals may elect to receive additional optional coverages:  (Denny Decl. ¶¶ 4–5; ECF No. 46-2 ("Suppl. Denny Decl.") ¶ 13)

(Policy at 4, 17–18; Denny Decl. ¶¶ 23, 34). Unlike her PIP coverage, Plaintiff's MedPay coverage did not cover wage losses incurred because of her inability to work. (ECF No. 41-14 ("Pryce Aff.") ¶ 8; *see also* Policy at 12, 17–18).

(Suppl. Denny Decl. ¶ 2).

(Denny Decl. ¶ 34).

. (Denny Decl. ¶¶ 35–36).

## II. Procedural History

Pryce filed her class action complaint on March 13, 2019. (Compl.). On August 30, 2019, Progressive moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). (ECF No. 15 ("Mot. to Dismiss")). Your Honor denied the motion in its entirety on November 15, 2019.

(ECF No. 18 ("Mem. & Order") at 7–8). Defendants subsequently answered the complaint on December 16, 2019. (ECF No. 20 ("Ans.")).

On December 18, 2019, Defendants requested that Your Honor amend the order denying their motion to dismiss to permit interlocutory appeal. (ECF No. 21). Your Honor denied the request the following week. (ECF No. 25). This Court subsequently approved the parties' joint case management statement (ECF No. 19; Order dated 2/7/2020), and granted multiple extensions to ensure that key discovery could take place in advance of Plaintiff's class certification motion despite the COVID-19 pandemic (Order dated 4/3/2020; Order dated 6/2/2020; Order dated 9/11/2020).

On January 6, 2021, Plaintiff amended her complaint to alter the scope of the class definition. *Compare* (Compl. ¶ 24) (bringing the action on behalf of "[a]ll persons insured by [Defendants]") *with* (Am. Compl. ¶ 24) (bringing the action on behalf of "All 'Eligible Injured Persons' as that term is defined by 11 NYCRR §§ 65-1.1–65.1.3 covered under a policy of insurance issued by [Defendants]"). Progressive did not oppose Plaintiff's amendment (ECF No. 37, Dec. 18, 2020 Pre-Motion Conf. Tr. at 2:22–3:4) and filed a corresponding answer on January 20, 2021. (Am. Ans.).

Plaintiff submitted the fully briefed motion for class certification currently before the Court on February 25, 2021. (Mot. for Class Cert.)[2] The Court subsequently granted Defendants leave to file a sur-reply in opposition to the motion (Def's Sur-Reply; Order dated 3/4/2021) and denied

---

[2] The Court granted the parties leave to electronically file certain documents under seal, including various exhibits submitted by both Plaintiff and Progressive, and to redact certain portions of Progressive's opposition brief (ECF No. 39-8 ("Def's Opp.")), Plaintiff's Reply (ECF No. 42 ("Pl's Reply"), and Progressive's Sur-Reply (ECF No. 47 ("Def's Sur-Reply")). (*See* ECF No. 39; ECF No. 46; Order dated 1/29/2021; Order dated 3/22/2021). The parties then filed corresponding redacted versions of Progressive's Opposition Brief (ECF No. 41-9), Plaintiff's Reply (ECF No. 41-10) and Defendant's Sur-Reply (ECF No. 45). References to these sealed documents and information derived from redacted materials are consequently redacted throughout this Report and Recommendation.

Plaintiff's request to file a response to that sur-reply. (ECF No. 48; Order dated 4/7/2021). The proposed response appended as an exhibit to Plaintiff's request was not considered in the drafting of this Report and Recommendation.

On June 11, 2021, Plaintiff submitted a supplemental letter to the Court regarding Judge Irizarry's decision in *Lanzillotta v. GEICO et al.*, Case No. 1:19-CV-01465. (ECF No. 50). Defendants filed a response letter on June 14,2021. (ECF No. 51). The Court reviewed both letters.

## DISCUSSION

I.   Personal Jurisdiction

As a threshold matter, the Court will address Progressive's challenge to the Court's assertion of personal jurisdiction over Progressive Corporation. (Def's Opp. at 25).

Under Rule 12(h)(1), a party must raise a defense of lack of personal jurisdiction either by motion under Rule 12 or in a responsive pleading; otherwise, the defense is waived. Fed. R. Civ. P. 12(h)(1). "'To preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its *first* responsive filing and need not articulate the defense with any rigorous degree of specificity.'" *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (quoting *Mattel, Inc. v. Barbie–Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (emphasis added); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) ("Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service of process. If he wishes to raise [either] of these defenses he must do so at the time he makes his first significant defensive move . . . .'") (alterations in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990)); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("A defendant may . . . forfeit its objections to personal jurisdiction by failing to raise them timely in the answer or in an initial motion."); *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading.").

Here, Defendants asserted that this Court lacks personal jurisdiction over the Progressive Corporation in their answer and amended answer, but failed to articulate that defense in their first "significant defensive move"—their motion to dismiss pursuant to Rule 12(b)(6). (*See* Mot. to Dismiss). Although Progressive "specifically denie[d] that the Court has personal jurisdiction over The Progressive Corporation" in its answer (Ans. ¶ 14; Am. Ans. ¶ 14), "'a delay in challenging personal jurisdiction by motion to dismiss may result in waiver, even where the defense was asserted in a timely answer.'" *Roberts*, 658 F. App'x at 616 (quoting *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999)). It would be unfair to give Progressive a second opportunity to dismiss claims as against Progressive Corporation for lack of personal jurisdiction where Defendants failed to raise that defense at the appropriate time, and where they waited to raise that defense until after an unfavorable ruling from the Court on their 12(b)(6) motion. *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 GBD, 2015 WL 1499185, at *7 (S.D.N.Y. Mar. 31, 2015) (finding waiver where, as here, defendant sought reconsideration of court's unfavorable ruling on 12(b)(6) motion before moving to dismiss for lack of personal jurisdiction); *Barter House, Inc. v. Infinity Spirits, LLC*, No. 17 Civ. 9276 (PAE), 2019 WL 3554584, at *19–20 (S.D.N.Y. Aug. 5, 2019) (finding waiver where defendant waited to assert lack of personal jurisdiction defense until after unsuccessful Rule 12(b)(1) and 12(b)(6) motion to dismiss); *Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633 (NGG) (MDG), 2015 WL 1527611, at *7 (E.D.N.Y. Mar. 31, 2015) (granting motion to strike jurisdictional defenses from answer because defendant had already moved to

dismiss under Rule 12(b)(1) and Rule 12(b)(6) without raising them). Simply put, Progressive should have raised this argument earlier.

## II.    Standing

Progressive challenges class certification on two standing grounds: first, that Plaintiff has suffered no injury and therefore lacks Article III standing; and second, that Plaintiff has no standing to sue Progressive Direct or Progressive Corporation—two companies that played no role in underwriting or administering Plaintiff's insurance policy and with whom Plaintiff has never interacted. As explained below, Plaintiff has sufficiently proven an injury to confer Article III standing for claims against Progressive Casualty but has not established standing with respect to Progressive Direct or Progressive Corporation.

### A.  Legal Standards

Whether a plaintiff has Article III standing is a "threshold question in every federal case" that "determine[s] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "'If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir.2005)). In the class action context in particular, "'[s]tanding to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class . . . .'" *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009) (quoting *Weiner v. Bank of King of Prussia,* 358 F. Supp. 684, 694 (E.D.Pa.1973)).

Establishing Article III standing in a class action requires a showing that "'for every named defendant there must be at least one named plaintiff who can assert a claim *directly* against that

defendant.'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (emphasis added) (quoting *Cent. States*, 433 F.3d .at 241). "'[A]t that point standing is satisfied and only then will the inquiry shift to a class action analysis.'" *Id.* (quoting *Cent. States*, 433 F.3d .at 241); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("'That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976)) (alterations in original); *Allee v. Medrano,* 416 U.S. 802, 828–29 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . . . Standing cannot be acquired through the back door of a class action.") (Burger, C.J., concurring in the result in part and dissenting in part).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). "Economic injuries are sufficient for standing," and "courts have long held that a plaintiff is injured, suffering an ascertainable loss, when he receives less than what he was promised." *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) (citing *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009)).

A plaintiff cannot rely on the allegations in her pleading alone to establish Article III standing; indeed, her burden becomes heavier as a case proceeds through the stages of litigation. *See Lujan*, 504 U.S. at 561 ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (internal quotation marks and citations omitted) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."); *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.")

At the class certification stage, a named plaintiff must prove standing by a preponderance of the evidence. *Calvo v. City of New York*, No. 14 Civ. 7246 (VEC), 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017); *see also Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists.") (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)). In particular, where a defendant proffers evidence beyond the pleadings to challenge a plaintiff's standing, "the plaintiff[] will need to come forward with evidence of [her] own to controvert that presented by the defendant 'if the affidavits submitted . . . reveal the existence of factual problems' in the assertion of jurisdiction."

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976)).

### B.  Plaintiff Suffered an Injury Sufficient to Establish Article III Standing

Plaintiff alleges that she received less than she was promised as a result of Progressive's statutory violation and breach of contract. (Am. Compl. ¶ 20). As Your Honor succinctly explained in ruling on Progressive's motion to dismiss:

> After subtracting $3,502 from Plaintiff's maximum First Party Benefits for Plaintiff's disability benefits but not offsetting a portion of Plaintiff's claimed lost wages, the No-Fault statute requires Defendants to pay Plaintiff up to $46,498 in First Party Benefits. Defendants only paid Plaintiff $44,005.03 in First Party Benefits.

(Mem. & Order at 7). Evidence propounded by Progressive of additional credits that it applied to Plaintiff's coverage limit beyond the statutory offset at issue here— ███████████████████ ████████████████████████████████████ (Denny Decl. ¶ 25)— does not negate the injury Plaintiff sustained by virtue of Progressive's taking extra offset credits toward the coverage limit that it was not entitled to take.

Put differently, Plaintiff's injury is the difference between the first party benefits paid and those owed under the proper interpretation of the statute.[3] That injury is traceable to the entity that administered her claims (Am. Compl. ¶ 12), which discovery has established is Progressive Casualty. (Def's Interrog. Resps. ¶ 4). Finally, her injury is redressable by judicial relief—namely, an order directing Progressive to pay overdue benefits plus interest and damages. (Am. Compl. ¶¶ 28, 33, 39).

---

[3] Progressive admits that "[a]t most, Plaintiff's coverage was reduced by $391.20, the difference between what Plaintiff received for lost wage benefits and NY state disability and what Progressive credited towards exhaustion of her policy limit." (Def's Sur-Reply at 1).

Progressive argues that Plaintiff suffered no economic injury because she was fully compensated for her wage loss claims. (Def's Opp. at 12–13). Specifically, Progressive argues that Plaintiff received higher monthly payments for lost wages under its calculation than she would have received under her own. (Def's Opp. at 12–13 (arguing that Plaintiff received "$693.60 more than Plaintiff would have been paid for lost wages under Plaintiff's theory")). However, a plaintiff may "allege[] a concrete, economic injury resulting from a defendant's violation of a statutory provision," sufficient to establish Article III standing, "regardless of the merits of the plaintiff's statutory interpretation" and "irrespective of the fact that defendants propose a reading of a statute that would, if accepted, undermine the merits of plaintiffs' claims." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574–75 (2d Cir. 2018) (citing *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010)). And, as this Court and others have confirmed, Plaintiff's interpretation of the statute is correct—insurers are not entitled to benefit twice by capping first party wage benefits at $2,000 and by deducting basic economic loss coverage limits beyond that cap.[4] (Mem. & Order at 5); *Lanzillotta v. GEICO Emps. Ins. Co.,* No. 19-CV-01465 (DLI) (LB), 2021 WL 2381905, at *2 (E.D.N.Y. June 10, 2021) (finding no substantial grounds for a difference of opinion in the application of the No-Fault statute); *Manrique v. State Farm Mut. Auto. Ins. Co.,* No. 21 Civ. 224 (KMK), 2021 WL 5745717, at *5 (S.D.N.Y. Dec. 2, 2021) ("The Legislature could have

---

[4] The Court does not agree with Progressive that Plaintiff is attempting to similarly benefit twice by claiming that "Progressive improperly reduced her policy limits by a flat $500/month" and that Progressive simultaneously paid her the correct amount. (Def's Sur-Reply at 2–3). Plaintiff correctly notes that the provisions of 11 N.Y.C.C.R.R. § 65-3.19(f) capping gross earnings at $2,500 applies in calculating first party benefits payable to the insured to account for the taxable nature of disability payments. The cap does not serve as the amount an insurer is permitted to credit toward the coverage limit. The Court concludes that § 65-3.19(f) permits a covered individual receiving disability benefits to recover more than $2,000 to account for the taxable nature of that collateral source of income. It does not permit an insurer to apply $2,500 to the coverage limit.

While Plaintiff has not provided an explanation for reducing Progressive's New York disability deduction from her actual disability payment ($544) to 80% of that disability payment ($435.20), the Court believes that this deduction properly accounts for the fact that Progressive is entitled to deduct the maximum of $2,000 in lost earnings per month from basic economic loss under § 5102(a)(2).

specifically authorized the deduction of wages in the basic economic loss beyond those capped in first party benefits. That the Legislature chose not to do so demonstrates that Defendant's reading of the provision extends beyond the statute's terms.").

Further, Plaintiff's injury is predicated not on the amount paid in first party benefits for lost wages in a given month, but on the additional credit toward her PIP coverage limit that Progressive took, and the premature exhaustion of her benefits that occurred as a result. (Pl's Reply at 2). Plaintiff has previously argued that she would have had approximately two additional months of PIP coverage had the statute been interpreted according to her theory. (ECF No. 17 ("Pl's Opp. to Mot. to Dismiss") at 15–17). And, as Progressive acknowledges, "[u]nder Plaintiff's theory, Progressive would pay the insured less money for lost wages, but under the right circumstances, the policy limits might exhaust later." (Def's Opp. at 7). Plaintiff has established that it is more likely than not that she was promised $50,000 in PIP coverage, that she received less than she was owed as a result of Progressive Casualty's conduct, and that had the No-Fault statute been properly followed, her benefits would have exhausted at a later date.

Progressive also argues that Plaintiff suffered no injury because she was not entitled to any additional wage benefits after returning to work in December 2015. (Def's Opp. at 12). Plaintiff responds that she was forced to use more than thirty vacation days on days that she was physically unable to work. (Pryce Aff. ¶ 6). Had Progressive not given itself additional credit toward the exhaustion of her policy, Plaintiff argues she could have sought compensation for lost earnings from work, including reimbursement for those lost vacation days, even after her return to work. (Pl's Reply at 3; Pryce Aff. ¶ 6). According to Progressive, ███████████████████

███████████████████████████████████

███████████████████████████████████

14

████████████████████████████████. (Suppl. Denny. Decl. ¶ 4). ███████████

██████████████████████████████████████████████████████

█████████████████████████████████████ (*Id.* ¶¶ 5–7). Nevertheless, Plaintiff has established that by taking statutory offsets that it was not entitled to, Progressive accelerated the occurrence of that point of exhaustion before Plaintiff reached her actual PIP coverage limit. Even if Plaintiff submitted those claims, Progressive's formula would have given Plaintiff less than she was entitled to receive overall.

Progressive further notes that Plaintiff suffered no injury because ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ (Denny Decl. ¶ 34; Suppl. Denny Decl. ¶ 2). That Progressive would have applied those claims toward Plaintiff's MedPay coverage, however, does not negate the injury that Progressive caused by improperly deducting funds from her Mandatory PIP coverage. Because Plaintiff has sufficiently established that Progressive improperly reduced her total PIP coverage by taking a statutory offset that it was not entitled to receive, she has established that she has Article III standing against Progressive.

### C. Plaintiff Lacks Standing to Seek Injunctive or Declaratory Relief

Although Plaintiff has established an injury traceable to Progressive Casualty that is redressable by monetary relief, she has not established an actual and imminent threat of future injury sufficient to confer standing to seek injunctive or declaratory relief.

"For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "Although past injuries may provide

15

a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir. 1998)). In *Kurtz*, the Second Circuit found that the named plaintiff lacked standing to enjoin defendants' sales practices where he made "no assertion that he intend[ed] to purchase additional . . . products [from the named defendants] or any other company." *Kurtz*, 818 F. App'x at 60–61. Similarly, in *Nicosia*, a named plaintiff's failure to allege an intention to purchase any products from the defendant corporation, let alone products that allegedly were sold in violation of federal and state consumer protection laws, led the court to conclude that the Plaintiff lacks standing to pursue an injunction. *Nicosia*, 834 F.3d at 239. Here, Plaintiff purports to seek injunctive relief on behalf of herself, other class members, and "all future 'covered persons' who file for no-fault benefits with defendants." (Am. Compl. ¶¶ 42–43). Her complaint also concludes, tracking the language of Rule 23(b)(2), that "Defendants have acted or refused to act on grounds generally applicable to the class, [such that] final injunctive relief is appropriate respecting the class as a whole." (Am. Compl. ¶ 25); *see also* Fed. R. Civ. P. 23(b)(2). However, she has not alleged or established by additional evidence that she remains covered by her Progressive auto insurance policy, such that she is subject to ongoing harm. Further, she has not alleged or established that she purchased a new policy after coverage under the policy at issue exhausted, or that she plans to purchase a new policy that will be subject to the same terms, such that she will be likely be subject to the same harm at some point in the future. As a result, Plaintiff has not established standing to pursue injunctive relief.

Plaintiff similarly has not established standing to pursue declaratory relief. Under the Declaratory Judgment Act: "[i]n a case of actual controversy within its jurisdiction . . . any court

of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A court will generally decline to exercise its discretion to entertain a request for declaratory relief where such relief would serve "no useful purpose." *Intellectual Capital Partner v. Inst. Credit Partners LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009). Declaratory relief serves "no useful purpose" where "legal issues will be resolved by litigation" of the underlying claims. *Id.*; *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,* No. 16-CV-6370 (SJF) (AYS), 2017 WL 6729854, at *12 (E.D.N.Y. Oct. 31, 2017), *aff'd* 736 F. App'x 274 (2d Cir. 2018) (same). Here, Plaintiff seeks:

> a declaratory judgment and order declaring the obligations of the defendants, their subsidiaries, parent companies and any persons known or unknown acting with them, under them or on their behalf, regarding the reduction of [b]asic [e]conomic [l]oss coverage by more than two thousand dollars per month set forth in Insurance Law § 5102(a)(2).

(Am. Compl. ¶ 44). However, the legal issues implicated by Plaintiff's request will be resolved through litigation on her breach of contract and statutory causes of action, such that declaratory relief is unnecessary. Further, relief under the Declaratory Judgment Act is "'intended to operate prospectively.'" *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (quoting *Storms v. United States*, No. 13-CV-811 (MKB), 2015 WL 1196592, at *21 (E.D.N.Y. Mar. 16, 2015)). As noted above, Plaintiff has not established that she is subject to an ongoing policy likely to be enforced against her in the future, such that prospective relief is appropriate. Given the adequacy of remedies at law and Plaintiff's failure to allege prospective harm, the Court funds that Plaintiff has not established standing to seek declaratory relief.

D.  Plaintiff Lacks Standing to Sue Progressive Direct and Progressive Corporation

In the class action context, the Second Circuit has repeatedly affirmed that "'with respect to each asserted claim' *against each defendant*, 'a plaintiff must always have suffered a distinct and palpable injury to herself.'" *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 94 (2d Cir. 2018) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (emphasis added); *see also Mosely v. Vitalize Labs, LLC*, No. 13 CV 2470 (RJD) (RLM), 2015 WL 5022635, at *3 (E.D.N.Y. Aug. 24, 2015) ("'[F]or each claim asserted in a class action, there must be at least one class representative . . . with standing to assert that claim.'" (quoting *Fort Worth Emps.' Ret. Fund v. J .P. Morgan Chase & Co.*, 862 F.Supp.2d 322, 331 (S.D.N.Y.2012)) (alteration in original). Further, "'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (alterations omitted) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). As described further below, Plaintiff is unable to establish standing for her claims against Progressive Direct or Progressive Corporation.

1.  Progressive Direct

In assessing Plaintiff's standing to sue Progressive Direct, *Mahon* is particularly instructive. In *Mahon*, a plaintiff in a putative class action brought suit against three title insurance companies— Chicago Title, Ticor Title, and Ticor Insurance Company—all of whom shared the same corporate parent; however, only Chicago Title sold insurance to and allegedly misled the plaintiff. *Mahon*, 683 F.3d at 60–61. The plaintiff argued that because these three companies were "wholly-owned subsidiaries of the same parent company, share[d] resources in Connecticut, coordinated in

18

drafting their premium rate schedules, and operate[d] in the same manner with respect to overcharging Connecticut borrowers in refinance transactions," she could represent borrowers injured by all three companies, despite having alleged only "that it was Chicago Title's conduct that injured her personally," and despite having alleged no "dealings with the Ticor entities." *Id.* at 61. Rejecting the plaintiff's novel interpretation of Article III, the Second Circuit dismissed the claims against the Ticor entities for lack of standing, and noted that the plaintiff "fail[ed] to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties." *Id.* at 65.

*Mahon* is on all fours with this case as it relates to Progressive Direct. Defendants have admitted that Plaintiff's policy was issued by one insurance company—Progressive Casualty (Am. Compl. ¶ 16; Am. Ans. ¶ 16) and that Progressive Direct and Progressive Casualty are both ultimately wholly owned subsidiaries of Progressive Corporation.[5] (Am. Compl ¶¶ 7–9; Am. Ans. ¶¶ 7–9; Def's Interrog. Resps. ¶ 2); ECF No. 11 ("Corporate Disclosure Statement") ¶¶ 2–3). Although Plaintiff only had dealings with Progressive Casualty, she purports to have standing to sue its sister company, Progressive Direct, on behalf of those individuals who may have purchased an insurance policy from Progressive Direct during the nine-month window such policies were offered. (*See* Def's Interrog. Resps. ¶ 3). As is well established in this Circuit, however, the speculative injuries of unnamed class members are insufficient to confer Article III standing upon a class representative. *See, e.g.*, *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 264 (E.D.N.Y.

---

[5] More specifically, Progressive Casualty "is a wholly owned subsidiary of Drive Insurance Holdings, Inc., a privately held sub-holding company, which in turn, is a wholly owned subsidiary of The Progressive Corporation." (Am. Ans. ¶ 8; *see also* Corporate Disclosure Statement ¶ 2). Similarly, Progressive Direct "is a wholly owned subsidiary of Progressive Direct Holdings, Inc., a privately held sub-holding company, which in turn, is a wholly owned subsidiary of The Progressive Corporation." (Am. Ans. ¶ 9; *see also* Corporate Disclosure Statement ¶ 3).

2018). Like the plaintiff in *Mahon*, Plaintiff has "failed to explain why [her] injury resulting from the conduct of [Progressive Casualty] should have any bearing on her Article III standing to sue other defendants." *Mahon*, 683 F.3d at 65.

Plaintiff attempts to distinguish *Mahon* by noting that the plaintiff there "had no relationship with the other companies" (Pl's Reply at 5), but fails to establish her own relationship with either Progressive Direct or Progressive Corporation; instead, she repeats their relationship with one another, *i.e.*, that Progressive Casualty administers PIP benefits for Progressive Direct policies using the same formula for both companies, and that "both companies are captives of The Progressive Corporation." (Pl's Reply at 5). Neither of these allegations is sufficient to establish that Plaintiff has any relationship with Progressive Direct, let alone that she was injured by Progressive Direct's conduct.

Plaintiff further suggests that because discovery has not revealed the entity or individual that is responsible for establishing the formula at issue (Def's Interrog. Resps. ¶ 5c), all three named defendants should be responsible for its uniform application across all New York policies (Pl's Reply at 4). Plaintiff provides no explanation for the merits of this inference beyond cursory allegations of an agency or subsidiary relationship, and does nothing to rebut the direct evidence in the record that neither Progressive Direct nor Progressive Corporation were involved in administering her particular claim or any other New York claims. (Def's Interrog. Resps. ¶ 4; *see also* Denny Decl. ¶ 24).

Plaintiff's citations to *Cassese*, a case in this district that pre-dates *Mahon*, and *Wu v. MAMSI Life & Health Ins. Co.,* 256 F.R.D. 158 (D. Md.2008), a case in the District of Maryland, are not binding on this Court and are otherwise unavailing. In *Cassese*, the Court declined to expand class certification to affiliate entities with whom the named plaintiffs had no relationship, despite those

affiliates' shared subsidiary relationship with an overall parent company." *Cassese v. Washington Mut., Inc.,* 262 F.R.D. 179, 183–84 (E.D.N.Y. 2009). As the *Cassese* court noted, "even despite closely interconnected business entities, a class action plaintiff does not have standing to sue defendants for a breach of contract to which the plaintiff was not a party." *Id.* at 183–84 (citing *Lindquist v. Farmers Ins. Co of Ariz.*, No. 06-cv-597, 2008 WL 343299 at *9 (D. Ariz. 2008). Here, Plaintiff similarly alleges breach of contract by entities that were not parties to her contract (Am. Compl. ¶¶ 29–33. *See generally* Policy), and who played no role in administering first party benefits pursuant to that contract (*see* Def's Interrog. Resps. ¶ 4; *see also* Denny Decl. ¶ 24

███████████████████████████████████████████████████████████

███████████████). As a result, Plaintiff is unable to point to any injury that is attributable to Progressive Direct, an affiliate entity with whom she has no relationship or transactional history. As noted in *Cassese*, "the plaintiff may be able to remedy some standing limitations by simply adding additional named plaintiffs that have pertinent claims to establish broader standing." *Cassese*, 262 F.R.D. at 184 (citing *Lindquist v. Farmers Ins. Co of Ariz.*, No. 06-cv-597, 2008 WL 343299 at *11 (D. Ariz. 2008)). Unless and until additional named plaintiffs are joined to this case, however, the standing defects preclude adjudication of her claims against Progressive Direct.

In light of the foregoing, I respectfully recommend that the motion for class certification be denied as against the Progressive Direct, and that claims against Progressive Direct be dismissed.

### 2. Progressive Corporation

Although *Mahon* is instructive in determining a plaintiff's standing to sue affiliate companies, the putative class representative in *Mahon* did not name the company's shared corporate parent. And in *Cassese*, while the court declined to expand the class as to additional subsidiaries, it did

certify the class as to the parent corporation. *Cassese*, 262 F.R.D. at 185. Applying New York law as it has been interpreted by the Second Circuit, the *Cassese* court found that the named plaintiffs adequately alleged direct control by the parent with respect to the subsidiary's activities, injury arising from the parent's conduct, common management between the parent and those who control the day-to-day operations of the subsidiaries, and common control of the subsidiary explicitly referenced in the parent's financial statements. *Id.*; *accord In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *6 (E.D.N.Y. Aug. 29, 2013) (dismissing claims against parent corporation for failure to adequately allege sufficient facts to support liability on a direct liability or alter ego theory under applicable Delaware law); *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 223–24 (S.D.N.Y. 2011) (noting that where named plaintiff and members of the class have not transacted business with the parent company, allegations of a parent/subsidiary relationship alone will not establish a putative class action plaintiff's standing to sue a parent absent factual allegations sufficient to state a veil piercing claim).

Here, Plaintiff has alleged and Progressive has admitted a parent-subsidiary relationship between Progressive Corporation and Progressive Casualty. (Am. Compl. ¶¶ 7–10; Am. Ans. ¶¶ 7–10; Corporate Disclosure Statement ¶ 2). On the basis of that relationship alone, Plaintiff concludes that Progressive Casualty is an "agent" and "captive" of Progressive Corporation. (Pl's Reply at 5; *see also* Pl's Opp. to Mot. to Dismiss at 19–20) ("Progressive acts through several discrete corporations . . . . As paragraph 12 of the complaint points out, only discovery can resolve which of these Progressive defendants are culpable."). Aside from this conclusory allegation, Plaintiff has neither alleged in her complaint nor established with the benefit of discovery any facts that would support a reasonable inference of Progressive Casualty's actual or apparent authority to act on behalf of Progressive Corporation. Further, her complaint alleges, and she has adduced,

no facts concerning Progressive Corporation's direct control and intent to disregard the corporate form sufficient to establish veil-piercing liability.

Causation for the purposes of standing is a relatively small hurdle. *See, e.g., Carver v. City of New York,* 621 F.3d 221, 226–27 (2d Cir. 2010) ("A plaintiff need not allege that 'the defendant's actions [were] the very last step in the chain of causation' to demonstrate that the defendant's actions caused the claimed injury. It suffices that the defendant's actions had a 'determinative or coercive effect upon the action of someone else' who directly caused the claimed injury.") (quoting *Bennett v. Spear,* 520 U.S. 154, 169 (1997)). Here, however, Plaintiff has neither alleged nor established by a preponderance of the evidence any action along the chain of causation taken by Progressive Corporation such that it can be held responsible for the injury she has suffered in the improper administration of her claims.

Plaintiff argues that, under *Wu* as favorably cited by *Cassese*, the fact that the formula at issue was "created by one or more of these entities" and that it is "uniformly applied to all policies written in New York by both Progressive Casualty and Progressive Direct" is "sufficient to give Plaintiff standing to represent the class." (Pl's Reply at 4). With the benefit of discovery, however, Plaintiff has not adduced any facts to establish that it is more likely than not that Progressive Corporation was directly responsible for the creation or implementation of that formula, or that it directed its subsidiaries to implement the formula on its behalf. Indeed, the record indicates a likelihood that "local management," rather than a national parent, would have established the formula with in-house and external counsel (Def's Interrog Resps. ¶ 5c), and that Progressive Casualty would have implemented the formula as the administrator of all policies in New York. (*Id.* ¶ 4). While these facts do not entirely preclude the possibility that Progressive Corporation created the formula or directed Progressive Casualty to implement the formula on its behalf, such

a conclusion would be based solely on speculation and would be inappropriate at this stage. *See, e.g., Holland v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 00233 (PAE), 2019 WL 4054834, at *8 (S.D.N.Y. Aug. 28, 2019) (finding no standing where "[t]he evidence adduced [did] not literally preclude the possibility that JPMC may have made robocalls to [plaintiff's] telephone numbers, but any finding . . . to that effect would [have] rest[ed] solely on speculation."); *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing").

Because Plaintiff has alleged no direct dealings with Progressive Corporation, relies on speculation to assign direct liability to Progressive Corporation, and alleges no facts sufficient to establish indirect liability to Progressive Corporation, she has not met her burden of establishing the causation prong of Article III standing by a preponderance of the evidence.

Accordingly, I respectfully recommend that the motion for class certification be denied as against the Progressive Corporation, and that claims against Progressive Corporation be dismissed.

## III.  Class Action Certification Requirements

Having determined that Plaintiff has sufficiently established standing to pursue claims against Progressive Casualty, the Court now decides whether it is appropriate to certify the Plaintiff's proposed class.

### A.  Legal Standards

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). As a result, the party seeking class certification must affirmatively demonstrate compliance with the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *In*

*re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11 (E.D.N.Y. 2020). In the Second Circuit, a party seeking class certification must also satisfy an implied requirement of ascertainability which requires that "a proposed class is defined using objective criteria that establish a membership with definite boundaries" and does not permit certification where "a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017)

In addition to the Rule 23(a) requirements and the implied requirement of ascertainability, a party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3),[6] she "must establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Id.*; *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements.").

---

[6] Although Plaintiff's class action complaint contains conclusions of law that repeat the requirements of Rule 23(b)(1) and Rule 23(b)(2) (Am. Compl. ¶ 25), her memorandum of law in support of her motion for class certification addresses only the predominance and superiority requirements of Rule 23(b)(3) (ECF No. 41-2 ("Pl's Mem. of Law") at 9). Accordingly, the Court will focus exclusively on the requirements of Rule 23(b)(3).

"Rule 23 should be construed 'liberally rather than restrictively'" and "[t]he 'general preference' of the Court of Appeals for the Second Circuit is 'granting rather than denying class certification.'" *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 60 (E.D.N.Y. 2015) (quoting *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009)). Nevertheless, "a court may certify a class action only if it concludes, after a 'rigorous analysis,' that the proposed class meets the requirements of Rule 23(a) and (b)." *In re Restasis*, 335 F.R.D. at 11 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013)). This rigorous "analysis may 'entail some overlap with the merits of the plaintiff's claim . . . . [b]ut courts may decide merits issues at class certification 'only to the extent they are relevant to' the application of Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), then quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

B.  Rule 23(a) Requirements and Ascertainability

1.  Ascertainability

Although not an enumerated requirement under Rule 23, courts in the Second Circuit must find that "a proposed class is defined using objective criteria that establish a membership with definite boundaries" and will not certify the class where "a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). This is not meant to be a demanding standard; rather, "it is designed only to prevent certification of classes whose membership is actually indeterminable." *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB) (RER), 2018 WL 1830811, at *31 (E.D.N.Y. Feb. 8, 2018), *adopted by* 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018) (citing *Gomez v. Lace Enters., Inc.*, No. 15 Civ. 3326 (CM), 2017 WL 129130, at *8 (S.D.N.Y. Nov. 24, 2015)). While "'membership of the class must be ascertainable at some point in the case, it does not necessarily have to be determined prior to class certification."

*Id.* (quoting *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)).

Progressive raises important concerns regarding key phrases in the class definition that preclude a finding of ascertainability. Specifically, Progressive argues that "actual monthly wages" and "full compensation" are indefinite and confusing. Progressive also argues that excluding individuals who have received "full compensation" creates an impermissible "fail-safe class" in which class membership is dependent on a determination of liability. *See, e.g.*, *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *13 (E.D.N.Y. May 10, 2019) ("A 'fail-safe' class is one whose definition limits putative class members to those entitled to relief and therefore, the class members can only be known after a determination of liability."), *adopted by* 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019); *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) ("A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment . . . . In other words, in a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.") (quoting *Mazzei v. Money Store,* 288 F.R.D. 45, 55 (S.D.N.Y. 2012), *aff'd*, 829 F.3d 260 (2d Cir. 2016))) (internal quotation marks and citations omitted).

The Court agrees, and finds that the class definition must be revised in order to ensure that the class is sufficiently ascertainable. "It is well-established that 'the court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.'" *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016) (alterations in original) (quoting *Morangelli v. Chemed Corp.,* 275 F.R.D. 99, 114 (E.D.N.Y. 2011)). In light of the Court's previous discussion regarding standing, and to alleviate these

problems with the class definition, the Court respectfully recommends that the class definition be amended as follows:

> All "Eligible Injured Persons" as that term is defined by 11 NYCRR §§ 65-1.1–65-1.3 covered under a policy of insurance issued **or administered** by **Progressive Casualty Insurance Company**, and subject to the provisions of Insurance Law § 5102 who **earned (net of taxes, benefits, and voluntary deductions)** monthly wages in excess of two thousand dollars per month **at any point during the period in which they were covered**, who have submitted First Party Benefit claims to, and received payment from, **Progressive Casualty Insurance Company** for First Party Benefits that included claims for lost wages, and which, after paying at least one month of First Party wage benefits, **Progressive Casualty Insurance Company** claim coverage had fully exhausted on or after March 13, 2013. Excluded from the Class are the defendant **company**; any entity that has a controlling interest in the defendant **company**; **and any** current or former directors, officers and counsel of the defendant **company**."

By making these modifications, class membership is not dependent on whether Progressive inaccurately claimed to have "fully compensated" the individual under the policy; rather, class membership is dependent on whether, by virtue of their take-home wages, a covered individual may have been subject to Progressive's inaccurate formula in any given month. As discussed in more detail below, the question common to all class members is whether Progressive properly calculated benefits for individuals earning monthly wages in excess of $2,000. While specifically identifying class members—and, in particular, identifying those individuals whose coverage was exhausted—will be burdensome, the above definition nevertheless provides objective criteria by which class members can be ascertain at some future point in stages of litigation. To the extent that removing the "full compensation" language may result in the class containing unharmed individuals, "the fact that some members of the proposed class may not have been harmed is not a bar to certification." *Bayne v. NAPW, Inc.,* No. 18-CV-3591 (MKB) (RER), 2021 WL 4822426, at *10 (E.D.N.Y. Aug. 10, 2021), *adopted by* 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021) (citing *Messner v. Northshore Univ. HealthSystems*, 669 F. 3d 802, 823 (7th Cir. 2012)); *see also In re Restasis*, 335 F.R.D. at 16 ("The Supreme Court and the Second Circuit have recognized that the

existence of uninjured plaintiffs does not bar class certification."). Finally, should this revised definition prove impractical or unmanageable for any reason at a later date, the Court may exercise its discretion to modify the definition again at a later point in the proceeding.

2. Numerosity

Rule 23(a)(1) requires a finding that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In the Second Circuit, numerosity is presumed for classes of 40 or more." *In re Restasis,* 335 F.R.D. at 11 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (same). "[I]n assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class." *Chime v. Peak Sec. Plus, Inc.* 137 F. Supp. 3d 183, 207 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). "There is no requirement to specify an exact class size in order to demonstrate numerosity," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 300 (E.D.N.Y. 2013), and "numerosity may be fulfilled by extrapolating from a sample," *Harte*, 2018 WL 1830811 at *27. However, if "the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001).

To demonstrate compliance with the numerosity requirement, Plaintiff points to spreadsheets supplied by Progressive which contain more than 900 unique policy and claims numbers, each of which she contends was subject to Progressive's flawed basic economic loss coverage formula. (Pl's Mem. of Law at 5–6; ECF No. 39-1 ("Progressive Policyholder Spreadsheet")). Progressive argues that the spreadsheets "merely [contain] a list of 'all New York PIP claims with claim payment totals greater than $35,000 and a payment for lost wages during the relevant class

period,'" and that they do not contain sufficient information to identify whether the listed policyholders earned enough per month, received payments for enough days per month, or exhausted their coverage, such that they can be used to identify policyholders that meet all the requirements of the class definition. (Def's Opp. at 14–16). As a result, Progressive argues Plaintiff's assertion of numerosity is based on "pure speculation or bare allegations" and remains unsatisfied. (*Id.* at 14–16).

While the *Edge* court confirmed that a plaintiff's "bare allegations" of numerosity "would be virtually impossible . . . to support" where that plaintiff "filed the motion for class certification before any discovery was conducted," *Edge*, 203 F.R.D. at 89, Plaintiff here filed her motion for class certification after conducting discovery, and directly points to information gleaned through spreadsheets that Progressive provided to support her numerosity claims. In particular, Plaintiff has supplied the Court with a set of calculations which she argues she can apply to the data in the spreadsheets to positively identify policyholders that meet the class definition "using simple math." (Pl's Reply at 5 (citing Progressive Policyholder Spreadsheet; ECF No. 39-2 ("Progressive Wage Calculator Spreadsheet")). Plaintiff explains that her methodology was confirmed by wage calculation worksheets that Progressive produced in response to discovery requests. (Pl's Reply at 5–7 (citing ECF No. 42-2 ("Wage Calculation Sheets")). Using these calculations, Plaintiff claims to have identified 83 claims from 2013 and early 2014 that meet the class definition, which by itself overcomes the threshold at which courts presumptively find joinder impracticable. (Pl's Reply at 7; ECF No. 42-3). Finally, Plaintiff notes that because these calculations employ simple arithmetic, there is no need for an expert to confirm her methodology. (Pl's Reply at 7).

Progressive argues that Plaintiff's calculations for determining numerosity are not a matter of simple arithmetic, that their accuracy is not self-evident, and that she should have introduced her

calculations through the testimony through an expert with specialized knowledge under Rule 701. (Def's Sur-Reply at 6–7). Because Plaintiff failed to do so, Progressive argues that "neither the Court nor a member of the jury can know whether this formula actually works or not." (*Id.* at 7).[7] The Court agrees. Although Plaintiff notes that "conducting simple arithmetic is not beyond the ability and knowledge of the jury," (Pl's Reply at 7), evaluating the methodology by which class criteria and class exclusions apply to a population of potential class members, and even the application of such a methodology to the requirements of Rule 23, falls within the ambit of an expert's testimony. *See In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549-(CMR) (WL), 2021 WL 100489, at *11 (S.D.N.Y. Jan. 12, 2021) (evaluating expert report regarding the application of class inclusion and exclusion criteria in connection with ascertainability requirement); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 32 (S.D.N.Y. 2020) (economist's expert opinion appropriate in examining issues relevant to whether predominance and adequacy requirements were met). The Court concludes that the methodology described by Plaintiff is more than "simple math" and requires the aid of an expert opinion to assign it any weight in the determination of numerosity.

Nevertheless, discovery obtained from Progressive indicates that there are "thousands of claims potentially at issue" in this case. (*See* Def's Interrog. Resps. ¶ 5b (noting that Progressive "does not possess data regarding when an insured (as defined under the applicable policy) and/or medical provider has been notified that first party benefits or coverage has been exhausted or has been denied coverage based on the same," and that "[o]btaining this information would require a

---

[7] While the admissibility requirements of evidence presented in Rule 23 proceedings to certify a class "have never been directly addressed by any authority that is binding on this Court," *Harte*, 2018 WL 1830811 at *17, when courts evaluate expert opinions offered in support of class certification, "the heavy weight of authority militates towards a *Daubert* inquiry," *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021) (citing *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549 (CMR) (WL), 2021 WL 100489, at *8 (S.D.N.Y. Jan. 12, 2021)).

file-by-file review of the *thousands of claims potentially at issue.*"); *see also* ECF No. 42-1 ("Def's Resps. to Pl's Second Req. for Produc. of Docs.") at 2–3 ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ )).

Progressive has alternatively argued that ████████████████████████████████████

████████████████████ (Def's Opp. at 20), and that ██████████████████████████████

██████████████████████████████████████████ (*id.*). Although

gathering such information would be time consuming, the information does exist. That only Progressive has information sufficient to accurately identify the exact number of individuals whose coverage exhausted or who meet the class criteria should not prevent the Court from making a finding of numerosity based on the information before it. *See Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) ("Such an information monopoly will not stand in the way of persons seeking relief.") (citing *McNeill v. New York City Housing Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989)).

While Plaintiff has not precisely quantified the number of individual policyholders that meet the class definition, the Court can make the common sense assumption that among the thousands of claims that are admittedly potentially at issue, it is more likely than not that enough policyholders would satisfy the class criteria such that joinder would be impracticable. *See Harte*, 2018 WL 1830811 at *27. Such a common sense assumption is particularly appropriate given this Circuit's preference for granting, rather than denying, class certification. *See Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 60 (E.D.N.Y. 2015). As a result, the Court finds that Plaintiff has satisfied her burden to show numerosity.

3. <u>Commonality</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citations omitted). To show commonality, a movant must demonstrate that the class claims "depend upon a common contention" that "is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[W]hat matters to class certification is not the raising of common "questions"—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal quotation marks omitted). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Nextel Commc'ns Inc.*, 780 F.3d at 137–38 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).

Plaintiff asserts that the commonality is satisfied here because Progressive admits to uniformly applying the same basic economic loss reduction formula to its policyholders' claims for more than thirty years. (Pl's Mem. of Law at 6 (citing Def's Interrog. Resps. ¶¶5(c)-(d))). The propriety of that calculation under New York insurance law is the common question of law whose answer is "apt to drive resolution of the litigation." (*Id.*); *see also Dukes*, 564 U.S. at 350. Progressive does not contest commonality, but rather argues that individual issues predominate over common issues. (Def's Opp. at 19). Because Progressive does not contest Plaintiff's theory that the insurer applied the 20% statutory offset across all New York policies, and because Progressive's specific concerns regarding predominance are adequately evaluated under the framework of Rule 23(b), the Court will not address them here. Since the propriety of Progressive's uniform application of

the 20% statutory offset to all class members' wage loss claims is a common question to all class members which sits at the core of this lawsuit, the Court finds that Plaintiff has sufficiently demonstrated Rule 23's commonality requirement.

    4.  Typicality

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997). Typicality is found "'when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 82 (E.D.N.Y. 2007) ("The typicality requirement is generally satisfied 'as long as plaintiffs assert that defendants committed the same wrongful acts in the same manner against all members of the class.'") (quoting *In re Medical X-ray Film Antitrust Litigation*, No. 93-CV-5904, 1997 WL 33320580 at *4 (E.D.N.Y. Dec. 26, 1997)).

"Minor variations in the fact patterns underlying individual claims" will not preclude typicality. *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). But while "'the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (quoting *Gary Plastic*

*Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017)).

Plaintiff argues that typicality is satisfied because her claims and the claims of the proposed class members arise from the same course of conduct: Progressive's application of the 20% statutory offset towards policyholders' coverage limit. Progressive argues that typicality is not satisfied because (1) Plaintiff is not a member of the class she purports to represent since she was fully compensated and never exhausted her coverage, (2) there is no evidence that Plaintiff or one of her medical providers is entitled to additional benefits. and (3) Plaintiff is subject to unique defenses.

Progressive's arguments regarding Plaintiff's full compensation, exhaustion, and entitlement to additional benefits have been dealt with above in the Court's discussion regarding standing and in its revisions to the class definition. Progressive's additional arguments in that vein—that its calculations are not the same as to all class members because of different applicable offsets beyond the 20% statutory offset at issue here (*i.e.*, disability, workers' compensation, and wage continuation offsets) and because of different coverage limits and additional coverage provided by Additional PIP, OBEL, and MedPay coverage—are unavailing. That variations exist in class members' sources of income during the period of wage loss may implicate other applicable offsets available to Progressive and that class members may have had extended coverage limits does not change the common course of conduct that grounds each claim; namely, that Progressive credits a 20% statutory offset toward the PIP coverage limit to all wage benefit claims on New York policies, including those of individuals earning over $2,000. Testimony submitted by Progressive via declaration indicates that ██████████████████████████████████████████

███████████████████████████████████████████████████ (*See* Denny Decl. ¶¶ 13–16).

With respect to "unique defenses," Progressive argues that, assuming Plaintiff's interpretation of the statute and calculation is correct, Progressive overpaid her lost wages claim and therefore "has a unique potential setoff, recoupment, and liability defense against her," which "may conflict with the class's interest." (Def's Opp. at 16–17). However, "[c]ourts in this Circuit have generally denied class certification based on defenses uniquely applicable to potential class representatives only where a full defense is available against a plaintiff's individual action or where the potential defenses go to the core of plaintiff's claims." *In re Acclaim Ent., Inc. Sec. Litig.*, No. 03-CV-1270 (JS) (ETB), 2006 WL 8441287, at *2 (E.D.N.Y. Aug. 7, 2006), *adopted by* 2006 WL 8441288 (E.D.N.Y. Sept. 25, 2006) (citing *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997); *Langner v. Brown*, No. 95 Civ. 1981 (LBS), 1996 WL 709757, at *3 (S.D.N.Y. Dec. 10, 1996)). Progressive's proposed defenses of setoff and recoupment are primarily applicable in the bankruptcy context rather than in cases like this one. *See, e.g.*, *In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997) (discussing recoupment and setoff under New York law, the distinction between the two, and the importance of that distinction in bankruptcy actions). Further, a successful defense of setoff or recoupment would only be a partial defense affecting Plaintiff's recoverable damages rather than provide a complete defense precluding liability.

Further, the Court agrees with Plaintiff that Progressive has not established that these "unique defenses" would threaten to become a focus of the litigation, particularly where Progressive failed to assert a counterclaim in the amount of the alleged overpayment. And, even if Progressive had filed a counterclaim for the allegedly overpaid sum, it would not preclude a finding of typicality. *See, e.g.*, *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 595–96 (E.D. Cal. 1999) ("The

mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs.") (quoting *Heartland Commc'ns. Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995)).

The Court also agrees with Plaintiff that these defenses are "not unique at all, because [they] concern[] the manner in which benefits are calculated, not just for Plaintiff, but for all class members." (Pl's Reply at 9). Assuming Progressive is correct that Plaintiff's statutory interpretation would result in an overpayment to insureds, it follows that such overpayment would have occurred to all insureds in the class. As such, the existence of such available defenses does not render Pryce an atypical plaintiff. To the extent that offset and recoupment defenses apply to other class members' claims, those defenses would be assessed in considering damages. Progressive has not proven, however, that issues regarding these potential defenses pose a threat of becoming the focus of the litigation. Instead, the focus of the litigation would be on Progressive's application of the 20% statutory offset against class members' Mandatory PIP coverage. Because Progressive's "unique defense" claims are unavailing, and because each class member's claim depends on the same legal arguments and the same underlying course of conduct, the Court finds that the typicality requirement of Rule 23(a)(3) is satisfied.

### 5. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy of representation, courts consider "'whether 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) [whether] plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, 502 F.3d 91, 99 (2d Cir. 2007)

(quoting *Baffa*, 222 F.3d at 60). "This process 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). "'Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Bayne*, 2021 WL 4822426, at *7 (quoting *In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. 38, 51 (S.D.N.Y. 2012)).

With respect to the first prong of the inquiry, Plaintiff argues that she has "no conflict of interest with other class members, is aware of her obligations, and has prosecuted and will continue prosecuting the action vigorously on behalf of the class." (Pl's Mem. of Law at 8). Progressive again argues that because Plaintiff lacks standing and is not a member of the class she purports to represent, she is not an adequate representative. As noted above, Plaintiff has standing and meets the class definition notwithstanding Progressive's objections regarding her alleged receipt of overpayment, her failure to submit claims for lost vacation time, or the non-exhaustion of her MedPay coverage. Similarly, the unique defenses discussed in connection with Rule 23(a)(3) do not constitute a significant conflict of interest that would render Plaintiff an inadequate representative.

With respect to the second prong of the inquiry, Plaintiff has submitted declarations in support her motion establishing her attorneys' qualifications, their experience handling no-fault insurance litigation and complex consumer class actions, and their ability to conduct the litigation. (ECF No. 41-6 ("Fitzpatrick Decl.") at 1–3; ECF No. 41-7 ("Weston Decl.") at 1–3). Progressive does not contest the adequacy of Plaintiff's counsel.

38

Based on the foregoing, because Plaintiff's interests are not antagonistic to the class and because her counsel have sufficient qualifications to represent the interests of the class, the Court concludes that the Plaintiff has satisfied her burden of establishing adequacy under Rule 23(a)(4).

### C. Rule 23(b)(3) Requirements—Predominance and Superiority

Having found that Plaintiff satisfies Rule 23(a)'s requirements, the Court must consider whether she has satisfied the requirements of Rule 23(b)(3). A court may only certify a class under Rule 23(b)(3) if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

In the Second Circuit, "[p]redominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*, 729 F.3d 108, 118 (2d Cir.2013)). This requires a "'more demanding'" inquiry than that required to find commonality under Rule 23(a), in which courts examine whether "common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). As a result, courts must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one

where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)).

In undertaking the predominance inquiry, courts typically begin by considering the elements of the underlying causes of action. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)), *adopted by* 2015 WL 5093503 (E.D.N.Y. July 10, 2015). However, the rule "'does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class wide proof,'" but requires that she "show that 'questions common to the class predominate, and not that those questions will be answered, on the merits, in the favor of the class.'" *Hasemann v. Gerber Prod. Co.,* 331 F.R.D. 239, 273 (E.D.N.Y. 2019) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459, 468 (2013)). Of particular relevance here, "common issues [typically] predominate when liability is determinable on a class-wide basis, even where class members have individualized damages." *Id.* (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006)).

In her initial brief, Plaintiff paid no attention to the predominance requirement, instead focusing on the language of Rule 23(b)(3) that relates to the superiority of class actions over other methods of adjudication. (Pl's Mem. of Law at 9–10); *see also In re Restasis*, 335 F.R.D. at 39 (noting that Rule 23(b)(3)(A)-(D) "provides a list of factors to be considered in [the superiority] assessment."). After Progressive raised a litany of valid concerns regarding the individual questions and fact-intensive inquiries required to determine class membership, liability, and

damages (which are discussed further below), Plaintiff reiterated that the lawfulness of Progressive's credit of more than $2,000 per month against PIP coverage is "the common issue which predominates over all other issues," and that Progressive's concerns for individual issues do not come into play until that question is answered. (Pl's Reply at 12). As Progressive noted, however, Plaintiff's reliance on the existence of this single common question conflates the commonality requirement of Rule 23(a) with the more demanding predominance requirement of Rule 23(b). Although the lawfulness of Progressive's benefits calculation is central to the claims at issue, the Court finds that Plaintiff has not satisfied her burden of establishing predominance with respect to her claims for recovery of overdue benefits under the No-Fault statute. Plaintiff has, however, established predominance with respect to her breach of contract and consumer protection claims.

Progressive contends that class treatment is inappropriate because the individualized inquiries necessary to adjudicate claims far outnumber the issues that are subject to generalized proof. Specifically, Progressive argues that "a multi-step analysis" is required "to determine class membership, liability, and damages" and that "each step requires a claim-by-claim review of the coverages available, lost wages calculations, offsets, and payments, including payments relating to other benefits (like medical expenses)." (Def's Opp. at 19). They note that assessing liability, in particular, will require "a highly individualized, fact-intensive inquiry," turning on whether each class member can prove she incurred covered expenses or losses that would have required payment or reimbursement, and on whether she can prove that such payments would have been owed to the class member rather than a medical provider. (Def's Opp. at 20–21). This could, in turn, "require reaching out to medical providers, obtaining medical exams, and finding out whether the insured

had additional costs or whether those costs were paid by another source." (Def's Sur-Reply at 8).[8] Plaintiff argues in response that Progressive "confuses liability with damages," and that liability need not be established separately for each individual. Instead, she argues, "Progressive's liability is established by its wrongful reduction of coverage," and "[t]he resulting damages will differ from class member to class member." (Pl's Reply at 13).

Although a finding that Progressive blanketly miscalculated claims as to all class members such that their benefits pre-maturely exhausted would establish that Progressive might owe insured individuals damages, liability under the No-Fault statute for overdue benefits in particular is not established until a claimant "supplies proof of the fact and amount of loss sustained." N.Y. Ins. Law § 5106(a); *see also New York Med. Rehab., P.C. v. Travelers Ins. Co.,* 40 Misc. 3d 76, 81 (N.Y. App. Term. 2013) ("A no-fault cause of action accrues when payment of no-fault benefits becomes 'overdue.'") (quoting § 5106)). Despite the centrality of the question of the lawfulness of Progressive's calculations in this case, the individualized issues that Progressive raises would indeed require a fact intensive inquiry and substantial evidence to determine whether overdue benefits exist for each class member, the amount of those overdue benefits, and the party to whom such benefits are owed. Such individual issues outweigh the single common issue here.

Plaintiff's breach of contract claims, on the other hand, are less dependent on an individualized inquiry. Given the boilerplate nature of the insurance policies at issue and the uniform application of the No-Fault statute to New York policies, a finding that Progressive systematically accelerates exhaustion for class members earning more than $2,000 per month in violation of the No-Fault

---

[8] In addition to arguing that individual issues outweigh common issues, Progressive argues that Plaintiff's failure to provide expert testimony outlining a proposed damages model for calculating damages on a class-wide basis precludes certification. (Def's Opp. at 21–22). However, it is well-established in this Circuit that "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," and proponents of class certification need not "rely upon a class-wide damages model to demonstrate predominance." *Roach*, 778 F.3d at 408–09.

statute would, as a matter of law, constitute a breach of every class member's contract. *Cf. In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d at 124 ("[C]ourts properly refuse to certify breach of contract class actions where the claims require examination of individual contract language."). Because Progressive has claimed that each class member's policy exhausted, the damages resulting from the breach of contract are the difference between the amount the class member received in lost wage benefits (and from collateral sources such as disability benefits) and what Progressive credited toward exhaustion of the policy limit.[9] As a result, Plaintiff's breach of contract claims are susceptible to generalized proof such that individualized questions regarding each class member's contract would not predominate.

Contrary to Progressive's assertions, Plaintiff's claims under New York's consumer protection statute, GBL § 349, are also susceptible to common proof. "To demonstrate an injury under § 349, the Plaintiff must put forth evidence that the Defendants 'engaged in an act or practice that is deceptive or misleading in a material way and that the Plaintiff has been injured by reason thereof.'" *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 126 (E.D.N.Y. 2019) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56 (1999) (alterations omitted)). Progressive argues that under *Shady Grove*, a court cannot find the predominance requirement satisfied where plaintiffs pursue claims under N.Y. GBL § 349 because such claims require individualized proof of subjective reliance. (Def's Opp. at 23 (citing *Shady Grove*, 293 F.R.D. at 308)). However, Plaintiff is correct that the *Shady Grove* court misstated the law, and that New York courts have "adopted an objective definition of 'misleading' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan*

---

[9] *See supra* note 3 (Progressive admits that "[a]t most, Plaintiff's coverage was reduced by \$391.20, the difference between what Plaintiff received for lost wage benefits and NY state disability and what Progressive credited towards exhaustion of her policy limit." (Def's Sur-Reply at 1)).

*Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995)). Indeed, courts in this District have repeatedly found that class-members can use generalized proof to make out claims under § 349, that the availability of such proof renders the predominance requirement satisfied, and have certified classes pursuing such claims. *See Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 274–75 (E.D.N.Y. 2019) (collecting cases); *see also Harte*, 2018 WL 1830811 at *34 (finding "GBL § 349 claim can be resolved more efficiently on a class-wide scale with common proof than on an individual basis with individual proof."), *adopted by* 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018). Here, the consumer-oriented nature of Progressive's activities and the objective nature of the reliance and materiality requirements of GBL § 349 are likewise amenable to generalized proof and do not preclude a finding of predominance.

Because Plaintiff's breach of contract and GBL § 349 claims may be addressed with generalized proof and are not outweighed by individual issues, the Court finds that the predominance requirement is satisfied as to those claims.

### 2. Superiority

Rule 23(b)(3) requires a plaintiff establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In assessing superiority, Rule 23 advises that courts might consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where

the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130; *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Plaintiff argues that no class member has a special interest in prosecuting her individual claim, that "[s]o far as the parties know, there is no pending litigation, similar to the instant action, against the Progressive entities," and that "largely because of the cost of separate litigation, class treatment is a superior means of litigating these claims." (Pl's Mem. of Law at 9–10). Plaintiff also concludes that there are no manageability issues in this case, given Progressive's ability to provide wage loss figures for each class member. (*Id.* at 10). Progressive argues that a class action in this case would be unmanageable ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ (Def's Opp. at 23–24; Def's Sur-Reply at 9–10). Regardless of the adequacy of Progressive's centralized database and its ability to digitally aggregate the information contained in claim files, however, the Court finds that the class action mechanism is superior to individual claims in this case. The class action device is superior where, as here, class members may receive small recoveries relative to the likely cost of litigation, and where the resolution of "substantial common legal issues and factual issues susceptible to generalized proof will achieve economies of 'time,

effort and expense, and promote uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d at 130–31 (quoting Fed. R. Civ. P. 23 advisory committee notes).

### D.   Rule 23(g)—Class Counsel

Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). The Rule requires that the court consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

With respect to the first consideration, Plaintiff has also noted in her motion that her "[c]ounsel obviously identified the claims asserted in this case." (Pl's Mem. of Law at 11). The attorney declarations submitted in connection with her motion for class certification further establish their experience in handling complex litigation and claims brought in connection with New York's No-Fault statute. (*See* Fitzpatrick Decl. at 1–3; Weston Decl. at 1–3). Plaintiff's counsel attested therein to their knowledge of the applicable law and the resources that they have already committed to represent the class. (*See* Fitzpatrick Decl. at 1–3; Weston Decl. at 1–3). Defendants have not challenged the appointment of Plaintiff's counsel. As a result, I respectfully recommend that Plaintiff's counsel be named as class counsel.

### **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiff's motion for class certification be granted in part. The Court should (1) dismiss for lack of standing the claims as

against Progressive Corporation and Progressive Direct; (2) deny class certification as to Plaintiff's claims for overdue benefits and interest under N.Y. Ins. Law § 5106; (3) grant class certification as to Plaintiff's breach of contract and N.Y. Gen. Bus. Law § 349 claims for the revised class described herein; (4) appoint Plaintiff as the class representative and Kevin P. Fitzpatrick of Marschhausen & Fitzpatrick, P.C., and John K. Weston of Sacks Weston, LLC as class counsel; and (5) direct the parties to submit to the Court within thirty days proposed forms and schedules for providing notice to the class.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Raymond J. Dearie within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.


*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: February 17, 2022
Brooklyn, NY