UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
CECELIA PRYCE, individually and on
behalf of others similarly situated,

                Plaintiff,

        - against -                           **MEMORANDUM AND ORDER**
                                                       19-CV-1467 (RJD) (RER)

PROGRESSIVE CORPORATION;
PROGRESSIVE CASUALTY INSURANCE
COMPANY; and PROGRESSIVE DIRECT
INSURANCE COMPANY,

                Defendants.
-------------------------------------------------------- x
DEARIE, District Judge

       Before the Court is Magistrate Judge Reyes' Report and Recommendation ("R&R"),

dated February 17, 2022, ECF No. 53, recommending that I grant as modified Plaintiff Cecelia

Pryce's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23, ECF No.

41. Defendants Progressive Corporation, Progressive Casualty Insurance Company, and

Progressive Direct Insurance Company (collectively "Progressive" or "Defendants") filed ten

objections to the R&R. See Def. Obj., ECF No. 54. Pryce did not object to the R&R but filed a

brief in opposition to Defendants' objections. ECF No. 56. Following a careful review of the

R&R, Defendants' objections, Pryce's response, and the parties' class certification briefs, the

Court largely adopts Judge Reyes' thorough and well-reasoned R&R. We grant Pryce's motion

to certify the class subject to the modifications delineated below.

## **BACKGROUND**

       Section 5102 of the NY Insurance Law (the "No-Fault Statute"), N.Y. INS. LAW § 5102,

requires Progressive to provide an insured with "First Party Benefits" comprised of:

1) reimbursement for Basic Economic Loss, which is capped at $50,000 and includes a maximum recovery of $2,000 per month in lost wages, **less**

2) twenty percent of lost earnings,[1] **less**

3) any government disability benefit received.

Pryce's policy with Progressive Casualty Insurance Company incorporates this $50,000 Basic Economic Loss coverage, referred to as "Mandatory Personal Injury Protection" or "PIP." See Policy, ECF No. 39-4 at 11-12.

Following a July 7, 2015 car accident, Progressive paid Pryce's claims to the tune of $7,268.32 for five months of lost wages, $36,536.71 for medical expenses, and $785.89 for other economic losses, totaling $44,590.92. See R&R at 3-4. Pryce also obtained $3,502 in state disability benefits, resulting in a combined $48,092.92 in First Party Benefits. Id. at 4; Am. Compl., ECF No. 34, ¶¶ 19-20. Progressive also counted a $200 deductible against Pryce's $50,000 PIP coverage. R&R at 4. On March 29, 2016, Progressive sent Pryce a denial of claim letter notifying her that "No fault benefits available under the above captioned policy have exhausted. All further No-Fault benefits will be denied." See Progressive Ltr., attached hereto. Pryce submits that upon being informed through this letter that her no-fault benefits had exhausted, she resorted to paying for physical therapy and rehabilitation out of pocket and took vacation days when physically unable to work due to her injuries. Pryce Aff., ECF No. 41-14, at ¶¶ 5-8.

Pryce subsequently initiated this action against Defendants for breach of contract, violation of the No-Fault Statute, and deceptive acts or practices in violation of New York

---

[1] We note, as we held in our Order denying Defendants' Motion to Dismiss, an insured subject to the $2,000 lost wage cap is not also subject to the 20% offset: "where the Plaintiff claims $2,500 per month or more in lost earnings, Defendants cannot offset 20% of Plaintiff's claimed lost wages from her maximum First Party Benefits because the $2,000 statutory maximum in lost wages benefits already limits Plaintiff to receiving less than the maximum 80% of her claimed lost wages envisioned by the Legislature." MTD Order, ECF No. 18, at 7.

General Business Law ("GBL") § 349 on the theory that she did not receive the full $50,000 in PIP she was entitled to under the No-Fault Statute and her Progressive policy before receiving the exhaustion letter. See Am. Compl. ¶¶ 26-39. Pryce seeks damages in addition to injunctive and declaratory relief. Id. ¶¶ 40-44.

Pryce's claims stem from her allegation that Progressive prematurely exhausted her $50,000 PIP through a formula that allowed Progressive to offset more money in lost wages from the $50,000 coverage than it paid her. Am. Compl. ¶ 21. Specifically, Progressive set Pryce's lost wages at $2,500 per month, even though they were $3,306, on the theory that applying the 20% deduction prescribed by the statute would reduce Pryce's wages to the statutory cap of $2,000 per month. See id. ¶¶ 18, 21. Progressive then deducted $2,500 — rather than $2,000 per month — from Pryce's $50,000 PIP cap, along with her state disability payments. See Denny Dec., ECF No. 39-3, ¶ 16. As a result of this practice, Pryce's $50,000 PIP coverage exhausted before she actually received $50,000 in payments from Progressive and the state disability fund. As we explained in our order denying Defendants' Motion to Dismiss, Defendants' practice "operate[d] to let Defendants benefit twice, once by limiting Plaintiff's lost wages benefits to $2,000 per month and again by permitting Defendant to offset [an additional] $500 per month from Plaintiff's maximum First Party Benefits." MTD Order at 5.

Pryce now seeks to represent a class of Progressive insureds who were subject to Progressive's exhaustion formula. The class definition, as revised by the R&R, includes:

> All "Eligible Injured Persons" as that term is defined by 11 NYCRR §§ 65-1.1–65-1.3 covered under a policy of insurance issued or administered by Progressive Casualty Insurance Company, and subject to the provisions of Insurance Law § 5102 who earned (net of taxes, benefits, and voluntary deductions) monthly wages in excess of two thousand dollars per month at any point during the period in which they were covered, who have submitted First Party Benefit claims to, and received payment from, Progressive Casualty Insurance Company for First Party Benefits that included claims for lost wages, and which, after paying at least one month of First Party wage benefits,

Progressive Casualty Insurance Company claim coverage had fully exhausted on or after March 13, 2013. Excluded from the Class are the defendant company; any entity that has a controlling interest in the defendant company; and any current or former directors, officers and counsel of the defendant company.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), when resolving objections to a report and recommendation of a magistrate judge, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and then either "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3). The court reviews for clear error any conclusory objections, Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015), as well as any portions of the R&R not objected to, White v. W. Beef Props., Inc., No. 07-cv-2345, 2011 WL 6140512, at *2 (E.D.N.Y. Dec. 9, 2011) (Dearie, J.); see also § 636(b)(1)(A).

## DISCUSSION

Because of the comprehensive nature of Defendants' ten objections, which span nearly every Rule 23(a) and (b)(3) provision in addition to jurisdictional and other issues, we review the following issues in turn: (i) standing; (ii) each Rule 23(a) and (b)(3) requirement; and (iii) Defendants' remaining objections.

**1.     Standing**

### A.  Pryce's Injury-in-Fact

Defendants object to the R&R on the ground that it failed to recognize that Pryce suffered no injury and therefore lacks Article III standing. To establish an injury-in-fact sufficient to confer Article III standing, "a plaintiff need only show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." Dubuisson v. Stonebridge Life Ins. Co., 887 F.3d 567, 574 (2d Cir. 2018).

Defendants first contend that Pryce suffered no injury because she actually received more in lost wages under Progressive's formula than she would have under her own proposed calculation. Def. Obj. at 7-9. Even if true, Defendants misconstrue the nature of the injury claimed by Pryce. Pryce does not allege that she is owed lost wages; her injury arises from a failure to realize the full benefit of $50,000 in PIP, which includes "medical expense[s], work loss, [and] other expenses." Policy at 11. After learning from Progressive that her PIP coverage had exhausted, Pryce did not to seek coverage for rehabilitation or the days she was physically unable to work. In Pryce's words, "if not for Defendants' 'creative accounting' by unlawfully increasing Basic Economic Loss from $2,000 to $2,500, Pryce would have been entitled to receive the full $50,000 in Basic Economic Loss coverage," not the lower amount she received. Pl. MTD Opp., ECF No. 17, at 5. As the R&R astutely explained, Pryce's injury is "predicated not on the amount paid in first party benefits for lost wages in a given month, but on the additional credit toward her PIP coverage limit that Progressive took, and the premature exhaustion of her benefits that occurred as a result." R&R at 14. Defendants' contentions about wage loss ignore the true source of Pryce's claimed injury.

Defendants next argue that Pryce cannot establish injury because her "first-party benefits never exhausted." Def. Obj. at 8. This objection boils down to semantics. Progressive's definition of "first-party coverage" includes not only the statutorily mandated $50,000 PIP, but also "[a]dditional PIP, Optional Basic Economic Loss and Medical Payments coverage." Denny Dec. ¶ 18. Defendants aver that "first-party coverage" does not expire until an insured has exhausted each coverage bucket available to them. Id. But only the mandatory $50,000 PIP is at issue in this case. The optional coverages that Progressive includes in its definition of "first party coverage" have no effect on the exhaustion formula applied to PIP.

Defendants' contentions as to the availability of additional coverages are also belied by the plain language of Progressive's policy and correspondence with Pryce. The policy provides that the Medical Payment ("MedPay") coverage she opted into covers "reasonable expenses incurred for necessary medical services," but does not mention rehabilitation or physical therapy. Policy at 17. In contrast, the definition of "Medical Expenses," which is not included in MedPay but *is* included in Basic Economic Loss, includes "psychiatric, physical and occupational therapy and rehabilitation" along with "nonmedical remedial care." Id. at 12. Furthermore, Progressive's March 29, 2016 letter to Pryce informing her of the exhaustion of her "No Fault Benefits," a phrase that is not defined in the letter, does not reference the availability of any additional coverage options, and states "All further No Fault benefits will be denied." Progressive Ltr. It was entirely reasonable for Pryce to conclude that she would receive no additional payments from Progressive to cover her physical therapy or the days off she took due to physical ailments.

In sum, Defendants' effort to paper over the exhaustion of PIP coverage by pointing to other irrelevant coverage options is unavailing. Our review leads us to the same conclusion reached by Judge Reyes: Defendants notified Pryce that she had exhausted Basic Economic Loss coverage in March 2016 even though she had not received $50,000 in First Party Benefits. Am. Compl. ¶ 20. As alleged, this premature exhaustion and consequent denial of a statutory and contractual right constitutes a cognizable injury sufficient to confer Article III standing.

### B.   Putative Class Members' Injury-in-Fact

Defendants also object to the R&R on the ground that Judge Reyes recommended the certification of a class that would include uninjured class members. Def. Obj. at 16. Specifically, the R&R modified the class definition to remove a carve out for individuals who were already fully compensated for their lost wages. See R&R at 28. This modification, Defendants argue,

exposes the class to members that have been fully compensated for lost wages and not suffered any injury.

But Defendants again confuse the injury alleged as one of lost wages as opposed to premature coverage exhaustion. The revised class definition is designed to capture individuals subject to the PIP exhaustion formula at issue, namely those who: (i) submitted claims to Progressive, (ii) earned more than $2,000 per month in wages, and (iii) were informed by Progressive that PIP coverage had exhausted. Under Plaintiff's theory of liability, because Progressive has apparently applied the same Basic Economic Loss formula for all policyholders, see Def. Interrog. Resp., ECF No. 41-1, ¶ 5(c); Denny Dec. ¶¶ 12-16, individuals who meet these criteria were injured when Progressive accelerated its own credits towards the PIP cap preventing the realization of the $50,000 in PIP required by law. We are satisfied that the class definition will reach class members who faced the relevant injury.[2]

C.  Pryce's Standing to Sue Progressive Direct and Progressive Corporation

Pryce has not objected to the R&R's conclusion that she lacks standing to sue Progressive Direct and Progressive Corporation. We review this conclusion for clear error and find none. Pryce's lack of any business relationship with Progressive Direct or Progressive Corporation, or any other means to trace her injuries to those entities, preclude her from meeting the Article III standing requirement that those defendants caused her injury. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021).

---

[2] As Judge Reyes recognized, even if the class were to include some uninjured individuals, the existence of class members without injury is not fatal to certification. See e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig., 335 F.R.D. 1, 16 (E.D.N.Y. 2020) (collecting cases in which courts certified classes with uninjured members and finding "no support for defendant's contention that the mere existence of uninjured class members in this putative class compels denial of" class certification).

Having found that Pryce lacks standing to sue Progressive Corporation, the Court need not address Defendants' contention that the Court lacks personal jurisdiction over Progressive Corporation. We note, for the avoidance of doubt, that Defendants waived the defense of personal jurisdiction by waiting to assert it until after their motion to dismiss the complaint. See Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir. 1998); FED. R. CIV. P. 12(h). While Defendants offer a single case, Simon v. Ultimate Fitness Group., LLC, No. 19-cv-890, 2019 WL 4382204 (S.D.N.Y. Aug. 19, 2019), in support of the proposition that courts may defer personal jurisdiction questions until the class certification stage, they neglect to mention that the defendant in that case raised the defense in its first significant defensive move, and, while encouraging the court to defer its decision until class certification, recognized the need to "preserve the issue of personal jurisdiction, which is waived if not raised in a responsive pleading or motion to dismiss." Id. at *4. In this case, Defendants failed to preserve the defense.

### D.  Pryce's Standing to Pursue Injunctive and Declaratory Relief

Pryce does not object to Judge Reyes' conclusion that she has no standing to seek injunctive or declaratory relief. Reviewed for clear error, we will not disturb the finding that Pryce's failure to establish ongoing harm precludes her claim for injunctive relief. We also find no error in Judge Reyes' conclusion that declaratory relief is unnecessary because the legal issues raised by Pryce will be resolved through the prosecution of her contractual and statutory causes of action against Defendants.

### 2.      Rule 23(a) Objections

Defendants object to the R&R's conclusion that Rule 23(a)'s numerosity, adequacy, and typicality requirements are satisfied. For the reasons below, we accept the R&R's recommendations on each of those issues.

A.  <u>Numerosity</u>

Defendants accuse the R&R of failing to meet the Rule 23(a)(1) requirement that a class be "so numerous that joinder of all members is impracticable" because, according to Defendants, Pryce has presented "no methodology" and no evidence of sufficient numerosity. Def. Obj. at 10-11. Pryce, however, has devised a formula sufficient to estimate class membership and satisfy the numerosity requirement: through a sampling exercise, she identifies at least 83 insureds who meet the class definition by virtue of having their PIP coverage exhausted through Progressive's deduction of $2,500 from its Basic Economic Loss formula. <u>See</u> Pl. Rep., ECF No. 42, at 11-12.

Defendants do not dispute the evidence or formula that Pryce submits. Instead, they accuse her of relying on "pure speculation" and failing to provide any "admissible evidence of numerosity." Def. Obj. at 10. This is both inaccurate as to Pryce's evidence and a misstatement of the law. Courts do not require evidence of the exact size or identity of the class, <u>see</u> <u>Spread Enters., Inc. v. First Data Merch. Servs. Corp.</u>, 298 F.R.D. 54, 67 (E.D.N.Y. 2014), and courts routinely find that the numerosity requirement is met through the extrapolation of sampled data, <u>see e.g.</u>, <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 293 F.R.D. 287, 299 (E.D.N.Y. 2013) (finding putative class to be sufficiently numerous where plaintiff's "estimate is based on its review of the randomly selected claims files, which . . . revealed 72 [potential class members]").

The Court is especially unmoved by Defendants' demand for the precise number and identity of class members in light of Progressive's apparent practice of not tracking the exhaustion of PIP coverage. Def. Cert. Opp., ECF No. 41-9, at 19; Denny Dec. II, ECF 47-1 ¶¶ 8, 12 (stating "Progressive cannot readily ascertain in its systems or otherwise whether an insured's PIP benefits exhausted" and noting an inability to index claim files including as a result

of handwritten claim files). Progressive's questionable recordkeeping will not be a bar to certification. See Harte v. Ocwen Financial Corp. (numerosity "may be fulfilled by extrapolating from a sample, particularly where, as here, the Defendant has categorically failed to provide detailed primary records as to the record files and identities of the proposed class members.") No. 13-cv-5410, 2018 WL 1830811, at *27 (E.D.N.Y. Feb. 8, 2018), report and recommendation adopted, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018).

Pryce has supplied more than mere speculation that the number of class members will exceed the threshold for Rule 23(a) numerosity. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at 40 members). Indeed, Defendants themselves conceded during discovery that there are "thousands of claims potentially at issue." Def. Interrog. Resp. at ¶ 5(b). Notwithstanding Defendants' conclusory assertions, we concur with Judge Reyes that Pryce has stablished by a preponderance of the evidence that the class will be sufficiently numerous.

## B.  Commonality

Defendants' objections do not address Judge Reyes' conclusion that Pryce established commonality among the putative class, so we review that finding for clear error. Pryce readily satisfies the commonality requirement because Progressive's practice of applying a Basic Economic Loss formula to policyholder claims causing premature exhaustion of PIP coverage constitutes a course of action common to all class members. See FED. R. CIV. P. 23(a)(2).

## C.  Typicality

Two of Defendants' objections relate to the Rule 23(a)(3) requirement that the claims or defenses of the class representative be typical of the claims or defenses of the class. These arguments overlap considerably with Defendants' contentions about Pryce's standing. Typicality

is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson v. Metro N. Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001).

      i.  *Pryce's Class Membership*

Defendants insist that Pryce is not a member of the putative class as defined by Judge Reyes. Because Pryce never exhausted her MedPay coverage, they argue that she cannot be included among a class of individuals whose "Progressive Casualty Insurance Company claim coverage had fully exhausted on or after March 13, 2013." Def. Obj. at 6-7. This is a valid objection to the class definition. Rather than "First Party wage benefits," which, as discussed, subjects the class to Progressive's expansive definition of first party benefits, the class must be construed such that only mandatory PIP is at issue. Accordingly, we modify the class definition to add the following bolded language:

> " . . . and which, after paying at least one month of First Party wage benefits, Progressive Casualty Insurance Company claimed **full exhaustion of mandatory $50,000 coverage, whether defined as Personal Injury Protection (PIP), no fault coverage, or Economic Loss Benefits**, on or after March 13, 2013.

This modification aligns the language in the class definition with Progressive's terminology for the $50,000 Basic Economic Loss cap and with the "no fault" language used by Progressive in the letter informing Pryce that her coverage had exhausted. With that change, Pryce's unused optional coverage does not render her atypical of the class she seeks to represent.

      ii.  *Unique Defenses*

Defendants also object to the R&R for a purported failure to recognize that Pryce is atypical because she is subject to unique defenses. Def. Obj. at 18-19. While Defendants are correct that typicality is generally not met where a class representative is subject to unique defenses, this rule is not rigidly applied in this Circuit, and is generally applied only where a full

11

defense is available against a class representative's action. <u>Madden v. Midland Funding, LLC</u>, 237 F. Supp. 3d 130, 157 (S.D.N.Y. 2017). "The test is whether the defenses will become the focus of the litigation, thus overshadowing the primary claims, and prejudicing other class members." <u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.</u>, 209 F.R.D. 323, 338 n. 22 (S.D.N.Y. 2002).

The defenses that Defendants allude to, principally setoff and recoupment, concern Progressive's overpayment of lost wages and the availability of optional coverages to Pryce. <u>See</u> Def. Obj. at 19. These defenses are not necessarily unique to Pryce and are not full defenses to Defendants' liability; in effect, they are damages questions, framed as defenses, which could be addressed at the claims administration stage. <u>See</u> <u>In re WRT Energy Sec. Litig.</u>, No. 96-cv-3610, 2006 WL 2020947, at *2-3 (S.D.N.Y. July 13, 2006) (finding typicality satisfied despite defendant's assertion of setoff defense); <u>Levinson v. Westport Nat'l Bank</u>, No. 09-cv-269, 2011 WL 13237887, at *2 (D. Conn. May 10, 2011) ("[I]ndividual class members' varying damages are not usually a legitimate basis to deny class certification because these issues may be dealt with through a claims administration process after a determination of liability."); <u>On House Syndication, Inc. v. Fed. Exp. Corp.</u>, 203 F.R.D. 452, 458 (S.D. Cal. 2001) (defendant's defense of setoff with respect to individual class members could be addressed through a claims administration process following a finding of liability).

We find no reason to disturb the R&R's findings as to typicality based on the possibility of damages-based defenses. Defendants point to no authority supporting a denial of certification based on the specific defenses they claim to be available. Pryce's theory of liability derives from the same facts and legal issues as other individuals meeting the class definition. Differences

12

among the class in amounts owed by Progressive — whether framed as damages or defenses — do not counteract this.

For the reasons discussed here and in the R&R, Pryce has demonstrated typicality by a preponderance of the evidence.

### D.  Adequacy

Defendants lodge familiar objections as to adequacy, arguing that Pryce is an inadequate class representative because she did not suffer any injury and is subject to unique defenses. See Def. Obj. at 15-16. Rule 23(a)(4) requires a finding that Pryce will fairly and adequately protect the interests of the class. The adequacy inquiry asks whether the class representative has interests that are antagonistic to other members of the class. See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, 502 F.3d 91, 99 (2d Cir. 2007). Defendants offer no substantive arguments connecting Pryce's purported lack of injury or any potential defenses with the adequacy requirement. Defendants have identified no conflicts of interest between Pryce and other putative class members. We accept the R&R's conclusion that Pryce will adequately represent the class.

### E.  Ascertainability

Defendants' seventh objection argues that the R&R's recommended class definition suffers from a lack of ascertainability because of imprecision in the definition of wages as being "net of taxes, benefits, and voluntary deductions." Def. Obj. at 17-18.

The implied requirement of ascertainability is satisfied where the class is defined "using objective criteria that establish[es] a membership with definite boundaries." In re Petrobras Secs., 862 F.3d 250, 257 (2d Cir. 2017). The ascertainability standard is "not a demanding one" and is designed to filter out indeterminable classes. Shady Grove, 293 F.R.D. at 299.

We agree with Defendants that the R&R's inclusion of net pay rather than gross pay is potentially problematic. Progressive calculates its lost wage cap based on gross wages, <u>see</u> Denny Dec. ¶ 16, and Progressive's wage calculation and policyholder spreadsheets, which will assist in the identification of class members, speak in terms of gross wages, <u>see</u> ECF No. 39-2; ECF No. 42-2. Moreover, the purpose of the statutory 20% reduction in lost wages is to avoid a windfall for insureds because First Party Benefits otherwise do not account for taxes on wages. <u>See</u> MTD Order at 4. Finally, as Defendants posit, the quantum of taxes, benefits and voluntary deductions is unique to each class member and would cause unnecessary individualized inquiries. Accordingly, the Court revises the class definition to apply to individuals " . . . who earned **gross** monthly wages in excess of two thousand dollars per month at any point during the period in which they were covered . . ."

Subject to that change, the Court finds the class to be sufficiently ascertainable.

**3.      Rule 23(b)(3) Objections**

A.  <u>Predominance</u>

Two of Defendants' objections challenge Judge Reyes' finding that Pryce satisfied the Rule 23(b)(3) requirement that questions of law or fact common to class members predominate over questions affecting only individual class members.

i.  *Generalized Proof of Coverage Exhaustion*

Defendants dispute Judge Reyes' conclusion that a determination of coverage exhaustion is susceptible to generalized proof. Defendants argue that this inquiry would require an individual review of each claim, causing individualized issues to predominate over classwide issues. Def. Obj. at 14. But "[t]he predominance inquiry should focus on the liability issue — 'if the liability issue is common to the class, common questions are held to predominate over

14

individual questions.'" In re Nigeria Charter Flights Cont. Litig., 233 F.R.D. 297, 304 (E.D.N.Y. 2006) (quoting Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 93 (S.D.N.Y. 1981)). Here, as discussed, if Progressive is held liable for breach of contract or violation of the No-Fault Statute, that liability can be generalized across the class because every class member was subject to the same Basic Economic Loss offset formula and was informed by Progressive that their coverage had exhausted.

Shady Grove provides an analog. Judge Gershon certified a class action against an automobile insurer for violations of the same laws at issue in this case, the No-Fault Statute and GBL § 349. In rejecting a predominance challenge similar to Progressive's here, Judge Gershon noted that "the factual inquiries that will be required will not necessitate mini-trials . . . . Rather, such determinations will be made by reference to mechanical calculations common to the class as a whole." 293 F.R.D. at 303. The court found that the "narrow scope of the class" allowed for a determination of class membership through "a review of the claim files" and noted the existence of an "extensive array of management tools available to a district court to address any individualized damages issues that might arise in a class action." Id. at 306 (internal quotation marks and citations omitted). The same is true here: the same theory of liability and course of action — PIP exhaustion — will apply to each class member. Class membership can be determined through a review of claim records and mechanical calculations of coverage exhaustion, if needed. The process of determining which policyholders are class members will not predominate over common questions of fact and legal liability.

ii. *Predominance as to the Elements of Pryce's Claims*

The R&R concluded that the predominance requirement was not met as to Pryce's claim under the No-Fault Statute. R&R at 42. That statute provides a cause of action for overdue

15

benefits, defined as "[benefits] not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." N.Y. INS. LAW § 5106(a). In other words, liability under the No-Fault Statute does not accrue until benefits are claimed and their payment becomes delinquent. Judge Reyes concluded that the structure of the No-Fault Statute meant that individual issues relating to the existence, timing and amounts of overdue benefits for each class member would predominate. R&R at 42. Pryce does not dispute this conclusion and we find no error.

Defendants, however, attempt to extend this same reasoning to Pryce's two other causes of action for breach of contract and GBL § 349. Def. Obj. at 7-9. First, according to Defendants, Judge Reyes should have found that predominance was not met as to the breach of contract claim because such a claim requires damages, which cannot be presumed on a classwide basis. But Defendants' insistence that the element of damages must be established classwide overstates the predominance requirement. Predominance weighs individual versus classwide issues; it does not require that every aspect of the class be uniform. Brown v. Kelly, 609 F.3d 467, 484 (2d Cir. 2010) ("Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions."); Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.") (cleaned up).

As recited above, each individual contemplated by the class definition was allegedly injured as a result of Progressive's premature exhaustion of mandatory PIP. The amount of injury may not be known precisely, but liability does not require an exact amount of damages. "Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." Johnson v. Nextel

Commc'ns Inc., 780 F.3d 128, 138 (2d Cir. 2015); see also In re Restasis, 335 F.R.D. at 31 ("[C]lass certification under Rule 23(b)(3) does not require a court to conclude 'that damages are capable of measurement on a classwide basis.'" (quoting Roach v. T.L. Cannon Corp., 778 F.3d 401, 402 (2d Cir. 2015))); In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 124, 130 (2d Cir. 2013) (affirming certification of class where damages differed among individuals but where contracts were uniform and damages could be calculated through a classwide formula).

Defendants' understanding of predominance would seemingly preclude from certification any proposed class lacking uniform damages. This rather absurd result is belied by the fact that courts routinely certify classes, including those sounding in breach of contract, where damages determinations vary among class members. See, e.g., In re Nigeria Charter Flights, 233 F.R.D. at 306 (certifying class in breach of contract action despite "the difficulties of managing this class action — namely the individual damage determinations"); Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 45 (E.D.N.Y. 2008) (certifying class in breach of contract action because "even if some portion of the class may have some non-common factual issues as to . . . damages, such issues are not so complex or overwhelming to defeat the predominance requirement").

Defendants make a similar argument that Pryce's GBL § 349 claim requires proof of subjective reliance on a deceptive practice, which is an individualized inquiry not susceptible to classwide proof. We have reviewed Judge Reyes' well-reasoned findings and do not disturb his conclusion that the weight of authority supports an objective definition of "misleading," which allows for the use of generalized proof on the § 349 claim. As Judge Reyes identified, a number of courts have certified GBL § 349 classes based on the availability of classwide proof of reliance. See R&R at 43-44.

The Court is satisfied that the predominance requirement is met as to Pryce's breach of contract and GBL § 349 claims.

## B.  Superiority

Defendants' next object that the R&R "improperly brushes aside serious problems with the manageability of class litigation." Def. Obj. at 15. This argument recycles Defendants' concerns about the difficulty of calculating injury on a case-by-case basis. Rule 23(b)(3) provides four factors for courts to consider in evaluating superiority: (a) the class members' interests in individually controlling separate actions; (b) the extent and nature of any other litigation concerning the controversy; (c) the desirability of concentrating litigation of the claims in the particular forum; and (d) the difficulties in managing a class action. See FED. R. CIV. P. 23(b)(3). Courts also consider fairness and efficiency in determining whether a class action is a superior method of adjudication. See Shady Grove, 293 F.R.D. at 306.

We agree with the R&R that efficiency and fairness are best served through class litigation. As we have found, Pryce's theory of liability is amenable to generalized proof based on Defendants' uniform calculation of PIP exhaustion. The possible burden of calculating class members' damages would be far outweighed by the time and resources necessary to conduct hundreds of isolated proceedings in which the facts and questions of liability would need to be established on behalf of each individual plaintiff. See Kaplan v. S.A.C. Cap. Advisors, L.P., 311 F.R.D. 373, 383 (S.D.N.Y. 2015) (finding superiority requirement met where individual suits would lead to the inefficient result of a multiplicity and scattering of proceedings). Moreover, as Judge Reyes concluded, class members like Pryce are likely to receive small recoveries which would be dwarfed by the cost of litigation, bolstering the superiority of proceeding as a class because each putative class member has a minimal interest in controlling the litigation. See

Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 53 (S.D.N.Y. 1987)

("[W]here the claims are numerous and relatively small, individual claimants are unlikely to take

on the burden and cost of litigation. The superiority of the class action in such cases is beyond

dispute.").

In light of the efficiencies of class adjudication, Pryce has satisfied the superiority

requirement.

### 4.    **Statutory Cap Issues**

Finally, we address Defendants' assertion that the R&R incorrectly interpreted the No-

Fault Statute to provide that an individual can recover more than $2,000 per month in lost wage

benefits. Def. Obj. at 20. Defendants appear to misread the R&R. The R&R unequivocally

recognized that New York law caps lost wages at $2,000. See R&R at 3, 13, 35, 36, 42-43.

Defendants provide no substantive support for their allegation that the R&R's purported failure

to recognize this fact "results in improper findings relating to Pryce's standing," typicality,

adequacy, or predominance. Def. Obj. at 20. The R&R's statement about the ability of an insured

to recover more than $2,000 factors in the addition of state disability payments to lost wage

payments owed by Progressive. See R&R at 13 n. 4 ("The Court concludes that § 65-3.19(f)

permits a covered individual *receiving disability benefits* to recover more than $2,000.")

(emphasis added). This is not a misinterpretation of the No-Fault Statute and, notwithstanding

Progressive's unsupported statements to the contrary, had no bearing on any of the R&R's

conclusions.

### CONCLUSION

The Court arrives at the conclusion that the proposed class is well-suited for class action

litigation notwithstanding Progressive's attempts to pile confusion onto the inquiry by referring

to extraneous coverage options, the purportedly herculean task of determining PIP exhaustion, which it curiously does not track, and an insistence, unsupported by law, that damages must be uniform classwide. But Progressive's approach to coverage exhaustion lends itself to an objective class definition as well as a course of conduct and theory of liability that are generalizable across the class. Incorporating the changes to the class definition described herein, the Court certifies a class consisting of the following:

> All "Eligible Injured Persons," as that term is defined by 11 NYCRR §§ 65-1.1–65-1.3, covered under a policy of insurance issued or administered by Progressive Casualty Insurance Company, and subject to the provisions of Insurance Law § 5102 who earned **gross** monthly wages in excess of two thousand dollars per month at any point during the period in which they were covered, who have submitted First Party Benefit claims to, and received payment from, Progressive Casualty Insurance Company for First Party Benefits that included claims for lost wages, and which, after paying at least one month of First Party wage benefits, Progressive Casualty Insurance Company claimed **full exhaustion of mandatory $50,000 coverage, whether defined as Personal Injury Protection (PIP), no-fault coverage, or Economic Loss Benefits**, on or after March 13, 2013. Excluded from the Class are the defendant company; any entity that has a controlling interest in the defendant company; and any current or former directors, officers and counsel of the defendant company.

> The Court appoints Kevin P. Fitzpatrick of Marschhausen & Fitzpatrick, P.C., and John

K. Weston of Sacks Weston, LLC as class counsel. We thank Judge Reyes for his thoughtful and comprehensive report and recommendation.

SO ORDERED.

Dated: Brooklyn, New York                    /s/ Raymond J. Dearie
      March 31, 2022                         RAYMOND J. DEARIE
                                               United States District Judge

NEW YORK MOTOR VEHICLE NO-FAULT INSURANCE LAW
DENIAL OF CLAIM FORM

TO INSURER: Complete this form, including Item 33. Send two copies to applicant. Upon the request of the injured person, the insurer should send to the injured person a copy of all prescribed claim forms and documents submitted by or on behalf of the injured person.

NAME, ADDRESS AND NAIC NUMBER OF INSURER OR NAME AND ADDRESS OF SELF-INSURER
Progressive Casualty Insurance Company NAIC# 24260
PO BOX 22031
Albany, NY 12201-2031

*For American Arbitration Association use*

| A. POLICYHOLDER | B. POLICY NUMBER | C. DATE OF ACCIDENT | D. INJURED PERSON |
|---|---|---|---|
| Pryce, Cecilia A | 63270457 -4 | Jul / 07 / 15 | Pryce, Cecilia |

| E. CLAIM NUMBER | F. APPLICANT FOR BENEFITS (Name and Address) | G. AS ASSIGNEE |
|---|---|---|
| 155331991-AMB0016 | Cecilia Pryce c/o Marschhausen & Fitzpatrick P.C. Attn: Kevin P. Fitzpatrick, Esq. 835 Old Country Road Westbury, NY 11590 | ☐ 1. Yes  ☒ 2. No |

TO APPLICANT: SEE REVERSE SIDE IF YOU WISH TO CONTEST THIS DENIAL.

YOU ARE ADVISED THAT FOR REASONS NOTED BELOW:
☒ 1. Your entire claim is denied as follows:
☐ 2. A portion of your claim is denied as follows:

☐ A. Loss of Earnings: $_____
☐ B. Health Service Benefits $_____
☐ C. Other Necessary Expenses $_____
☐ D. Interest: $_____
☐ E. Attorney's Fees: $_____
☐ F. Death Benefit $_____

REASONS(S) FOR DENIAL OF CLAIM (Check reasons and explain below in item 33)
POLICY ISSUES

☐ 3. Policy not in force on date of accident
☐ 4. Injured person excluded under policy conditions or exclusion
☐ 5. Policy conditions violated
☐ a. No reasonable justification given for late notice of claim.
☐ b. Reasonable justification not established. You may qualify for special expedited arbitration. See page 2 of this form for instructions.
☐ 6. Injured person not an "Eligible Injured Person."
☐ 7. Injuries did not arise out of use or operation of a motor vehicle.
☐ 8. Claim not within the scope of your election under Optional Basic Economic Loss coverage.

LOSS OF EARNINGS BENEFITS DENIED
☐ 9. Period of disability contested: period in dispute From _____ Through _____
☐ 10. Claimed loss not proven
☐ 11. Exaggerated earnings claim of $_____ per month denied.
☐ 12. Statutory offset taken.
☒ 13. Other, explained below.

OTHER REASONABLE AND NECESSARY EXPENSES DENIED
☐ 14. Amount of claim exceeds daily limit of coverage
☐ 15. Unreasonable or unnecessary expenses
☐ 16. Incurred after one year from date of accident
☒ 17. Other, explained below

HEALTH SERVICE BENEFITS DENIED
☐ 18. Fees not in accordance with fee schedules
☐ 19. Excessive treatment, service or hospitalization From _____ Through _____
☐ 20. Treatment not related to accident
☐ 21. Unnecessary treatment, service or hospitalization From _____ Through _____
☒ 22. Other, explained below

COMPLETE ITEMS 23 THROUGH 32 IF CLAIM FOR HEALTH SERVICE BENEFITS IS DENIED

| 23. Provider of Health Service (Name, Address and Zip Code) | 25. Period of bill - treatment dates | 29. Date final verification received |
|---|---|---|
| | 26. Date of bill | 30. Amount of bill $ |
| 24. Type of service rendered | 27. Date bill received by insurer | 31. Amount paid by insurer $ |
| | 28. Date final verification requested | 32. Amount in dispute $ |

33. State reason for denial, fully and explicitly (attach extra sheets if needed).

# PLEASE SEE ATTACHED

| Mar 29, 2016 | Angel M Boyer/wt - Medical Claims Representative | 518-560-3188 |
|---|---|---|
| DATE | Name and Title of Representative of Insurer | Telephone No. & Ext |

PO BOX 22031 Albany, NY 12201-2031
Name and address of Insurer claim processor (Third Party Administrator), if applicable     Telephone No. & Ext

NYS FORM NF-10 (Rev 3/2013)
Page 1 of 3

PLTF 000001

| A. POLICYHOLDER | B. POLICY NUMBER | C. DATE OF ACCIDENT | D. INJURED PERSON |
|---|---|---|---|
| Pryce, Cecilia A. | 63270457 -4 | Jul / 07 / 15 | Pryce, Cecilia |

13. State reason for denial, fully and explicitly (attach extra sheets if needed):

Please be advised that No Fault benefits available under the above captioned policy have exhausted.  All
further No Fault benefits will be denied.

cc:   Cecilia Pryce
█████████████████

PLTF 000002

DENIAL OF CLAIM FORM -- PAGE TWO

IF YOU WISH TO CONTEST THIS DENIAL, YOU HAVE THE FOLLOWING OPTIONS:

1. Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: One State Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Boulevard, Mineola, NY 11501, or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202.

Although the Department of Financial Services will attempt to resolve disputed claims, it cannot order or require an insurer to pay a disputed claim. If you wish to file a written complaint, send one copy of this Denial of Claim Form with copies of other pertinent documents with a letter fully explaining your complaint to the Department of Financial Services at one of the above addresses.

If you choose this option, you may at a later date still submit this dispute to arbitration or bring a lawsuit; or

2. You may submit this dispute to arbitration. If you wish to submit this claim to arbitration, then mail or e-mail a copy of this Denial of Claim Form along with a complete submission of all other pertinent documents and a table of contents listing your submissions, in duplicate together with a $40 filing fee, payable by check, money order, or credit card to the American Arbitration Association (AAA) to:

> AMERICAN ARBITRATION ASSOCIATION (AAA)
> NEW YORK INSURANCE CASE MANAGEMENT CENTER
> 120 BROADWAY
> NEW YORK, NEW YORK 10006
> nylcmc.filingsubmissions@adr.org

Please contact the American Arbitration Association's customer service department at (917) 438-1660 with any questions about case filing.

A complete copy of this filing, listing all bills and proofs as well as a table of contents listing your submissions must be provided to the AAA and the insurer at the time of filing for arbitration. The filing must be complete with all necessary documentation, as any late submission may not be admissible at arbitration. The filing fee will be returned to you if the arbitrator awards you any portion of your claim. However, you may be assessed the costs of the arbitration proceeding if the arbitrator finds your claim to be frivolous, without factual or legal merit or was filed for the purpose of harassing the respondent. The decision of an arbitrator is binding, except for limited grounds for review set forth in the Law and regulations promulgated thereunder.

If you are contesting the denial of claim and wish to submit the dispute to arbitration, state on accompanying sheets the reason(s) you believe the denied or overdue benefits should be paid. Attach proof of disability and verification of loss of earnings in dispute, sign below, and send the completed form to the American Arbitration Association at the address given in item 2 above.

| Loss of earnings: | Date claim made: _____ | | Gross earnings per month $ _____ | |
|---|---|---|---|---|
| Period of Dispute: | From _____ Through _____ | | Amount claimed: $ _____ | |

Health Services: (Attach bills in dispute and list each one separately)

| Name of Provider(s) | Date of Service | Amount of Bill | Amount in Dispute | Date Claim Mailed |
|---|---|---|---|---|
| | | | | |
| | | | | |

Other Necessary Expenses: (Attach bills in dispute and list each one separately)

| Type of Expense Claimed | Amount Claimed | Date Incurred | Date Claim Mailed | Amount in Dispute |
|---|---|---|---|---|
| | | | | |
| | | | | |

Other: (attach additional sheet if necessary)

- Upon your request, if you file for arbitration within 90 days of the date of this denial or the claim becoming overdue, your case will be scheduled for arbitration on a priority basis.

- You qualify for special expedited arbitration if the insurer has determined that your written justification for submitting late notice of claim failed to meet a "reasonableness standard". Your specific request for special expedited arbitration must be filed within 30 days of the date of denial. Your filing must be complete and contain all information that you are submitting at the time of filing.

NYS FORM NF-10 (Rev 3/2013)
Page 2 of 3

PLTF 000003

DENIAL OF CLAIM FORM -- PAGE THREE

3. You may bring a lawsuit to recover the amount of benefits you claim to be entitled to.

THE UNDERSIGNED AFFIRMS AND CERTIFIES AS TRUE UNDER THE PENALTY OF PERJURY THAT THIS FILING IS BEING MADE IN GOOD FAITH AND THAT UPON INFORMATION, BELIEF AND REASONABLE INQUIRY THE DOCUMENTS BEING SUBMITTED HEREWITH ARE NOT FRAUDULENT AND THAT EXACT COPIES OF ALL DOCUMENTS PROVIDED HEREWITH HAVE BEEN MAILED TO THE INSURER AGAINST WHOM THE ARBITRATION IS BEING REQUESTED. UNLESS DISCLOSED WITH THIS SUBMISSION, THE DISPUTED AMOUNTS REMAIN UNPAID TO THE APPLICANT BY ANY PAYOR AND THERE HAS BEEN NO OTHER FILING OF AN ARBITRATION REQUEST OR LAWSUIT TO RESOLVE THE DISPUTED MATTERS CONTAINED IN THIS SUBMISSION.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR COMMERCIAL INSURANCE OR A STATEMENT OF CLAIM FOR ANY COMMERCIAL OR PERSONAL INSURANCE BENEFITS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, AND ANY PERSON WHO, IN CONNECTION WITH SUCH APPLICATION OR CLAIM, KNOWINGLY MAKES OR KNOWINGLY ASSISTS, ABETS, SOLICITS OR CONSPIRES WITH ANOTHER TO MAKE A FALSE REPORT OF THE THEFT, DESTRUCTION, DAMAGE OR CONVERSION OF ANY MOTOR VEHICLE TO A LAW ENFORCEMENT AGENCY, THE DEPARTMENT OF MOTOR VEHICLES OR AN INSURANCE COMPANY, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE VALUE OF THE SUBJECT MOTOR VEHICLE OR STATED CLAIM FOR EACH VIOLATION.

| ARBITRATION REQUESTED BY: | | |
|---|---|---|
| LAST NAME          FIRST NAME | NAME OF LAW FIRM, IF ANY | |
| TELEPHONE NUMBER: | | |
| FAX NUMBER: | | |
| EMAIL ADDRESS: | ADDRESS | |
| SIGNATURE | ARE YOU AN ATTORNEY? YES ☐ NO ☐ | DATE |

**IMPORTANT NOTICE TO APPLICANT**

If box number 3 ("Policy not in force on date of accident") on the front of this form is checked as a reason for this denial, you may be entitled to No-Fault benefits from the Motor Vehicle Accident Indemnification Corporation (M.V.A.I.C.) (646-205-7000) located at 100 William Street, New York, New York 10038. The Insurance Law requires that you must file an Affidavit of Intention to Make Claim with M.V.A.I.C. Therefore, it is in your best interest to contact the M.V.A.I.C. immediately and file such an affidavit, even if you intend to contest this denial.

NYS FORM NF-10 (Rev 3/2013)
Page 3 of 3

PLTF 000004