UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CECELIA PRYCE suing individually on her own behalf and representatively on behalf of a class of plaintiffs similarly situated,<br><br>        Plaintiff,<br><br> -against-<br><br>PROGRESSIVE CORPORATION; PROGRESSIVE CASUALTY INSURANCE COMPANY; and PROGRESSIVE DIRECT INSURANCE COMPANY,<br><br>        Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 19-CV-1467 |

*For the Plaintiff:*
KEVIN P. FITZPATRICK
Marschhausen & Fitzpatrick, P.C.
73 Heitz Place
Hicksville, New York 11801

*For the Defendant:*
KYMBERLY KOCHIS
Eversheds Sutherland
1114 Sixth Avenue, 40th Floor
New York, New York 10036

**BLOCK, Senior District Judge:**

Plaintiff Cecilia Pryce brought this class action lawsuit against Defendants

Progressive Corporation, Progressive Casualty Insurance Company, and

Progressive Direct Insurance Company, alleging breach of contract, and violations

of New York's Comprehensive Motor Vehicle Reparations Act, New York

Insurance Law § 5101 *et seq.* (the "No-Fault Statute"), and New York General

1

Business Law § 349 ("GBL § 349"). On March 31, 2022, the Court certified a class (the "Class") with respect to Pryce's GBL § 349 and breach-of-contract claims, but not the No-Fault Statute claim and dismissed Progressive Corporation and Progressive Direct Insurance Company from the case, leaving Progressive Casualty Insurance Company ("Progressive" or "Defendant") as the sole remaining defendant. *See* ECF Nos. 53, 58. Pryce has now moved for partial summary judgment on liability on both class action claims and a remaining individual claim against Progressive. *See* ECF No. 97. Progressive has also separately moved for summary judgment seeking dismissal of all claims. *See* ECF No. 101. Also before the Court is Progressive's motion to exclude the expert testimony of Stephen M. Dripps and Chad L. Staller, who produced a report on the potential class size and damages. *See* ECF No. 104.

For the following reasons, the Court grants Pryce's motion for partial summary judgment on liability only with respect to the breach-of-contract class claim. Pryce's individual claim is consolidated with this class claim. Progressive's motions for summary judgment are denied as academic. Additionally, Progressive's motion to exclude expert testimony is denied. The issues of damages and claims administration on the breach-of-contract claim are referred to the magistrate judge for resolution.

# I.    History of the Litigation

## A. Underlying Facts

On July 7, 2015, Pryce was injured in a car accident and submitted a claim for no-fault benefits to Progressive, with whom she had a valid policy providing $50,000 in no-fault benefits coverage ("Personal Injury Protection" or "PIP" coverage). Pryce was out of work for five months, returning to work on December 6, 2015. Progressive paid Pryce $36,536.71 for medical expenses and $7,268.32 in lost wage benefits under her PIP coverage. In determining when Pryce had exhausted this $50,000 in coverage, Progressive also took a credit of $3,502.00 for New York State disability benefits to Pryce and also offset $1,817.08 from Pryce's wages. These payments and offsets total $49,125.11. Pryce's $50,000 PIP coverage was ultimately exhausted in March 2016 as a consequence of adding to this sum the $200 deductible and a separate payment Progressive made directly to a medical provider. *See* Decl. of Emily Denny at ¶ 27, ECF No. 100-3; Def.'s Rule 56.1 Statement at ¶ 35, ECF No. 101-2.

Progressive assesses wage loss claims in the following manner, which is how it arrived at Pryce's benefit calculation.[1] If an insured person has gross wages of more than $2,500 per month, Progressive first caps the gross wage figure at

---

[1] The parties put forward differing characterizations of Progressive's process for handling wage loss claims in their respective Rule 56.1 statements, but do not materially disagree about the procedure at issue.

$2,500 per month. From that $2,500 figure, Progressive then subtracts the amount of New York State disability payments the person received. Progressive then subtracts 20% of that reduced total pursuant to New York Insurance Law § 5102. From that total, Progressive then subtracts any other offsetting payments, such as workers' compensation. Progressive pays the resulting total to the insured as a lost wage benefit, while counting $2,500 in gross wages towards the exhaustion of the insured's policy limit. In Pryce's case, because she made more than $2,500 per month at the time of the accident,[2] this meant she received approximately $1,400 per month in lost wage benefits.[3]

On March 3, 2019, Pryce initiated this litigation, alleging that Progressive's use of this wage calculation formula wrongly deprived her of benefit payments by prematurely exhausting her $50,000 coverage limit. Pryce contends that Progressive's use of this formula (1) violates the No-Fault Statute's requirements for automobile insurers to provide certain prescribed benefits, (2) constitutes a breach of Progressive's contract to provide $50,000 in coverage, and (3) violates GBL §349 by mispresenting the company's compliance with New York law and the benefits provided by its insurance policy.

### B. The Class Certification Decision

---

[2] Pryce made approximately $3,306.77 per month at the time of the accident.
[3] *See* Decl. of Emily Denny at ¶ 21.

On March 31, 2022, Judge Raymond Dearie certified a class with respect to Pryce's breach-of-contract and GBL § 349 claims but declined to certify a class with respect to the No-Fault Statute claim because the predominance requirement was not met. *See* ECF No. 58. That decision followed his earlier order denying Progressive's motion to dismiss for failure to state a claim. *See* ECF No. 18. In both its motion to dismiss and opposition to class certification, Progressive's core argument was that its wage loss formula did not contravene the No-Fault Statute as a matter of law. Judge Dearie flatly rejected this argument in both instances.

For reasons explored in more detail below, the No-Fault Statute's provisions are deemed part of the insurance contracts between Progressive and putative class members. Therefore, the fact that Progressive's wage loss formula did not conform to the statute was the basis for class certification on the breach-of-contract and GBL §349 claims. In other words, Judge Dearie reasoned that certification was appropriate because Progressive used a formula that violated the contracts of each putative class member in the same fashion. However, because the particular cause of action embedded in the No-Fault Statute requires plaintiffs to demonstrate an insurer's payment of a specific claimed benefit is overdue, Judge Dearie concluded that individual issues concerning the existence of these claims would predominate, and class certification was inappropriate.

Because Progressive again repeats substantially similar arguments concerning its wage loss formula's conformity with the No-Fault Statute in its summary judgment papers, it is useful to now summarize in greater detail Judge Dearie's lucid reasoning in these prior orders.

New York's No-Fault Statute requires automobile insurers to provide insureds with no-fault coverage by paying them First Party Benefits that are equivalent to their Basic Economic Loss. *See* N.Y. Ins. Law §§ 5101–03. The statute defines an insured's Basic Economic Loss as medical costs, lost earnings, and other reasonable expenses, up to $50,000. *Id.* at § 5102(a)(1)–(3). Lost earnings are capped at $2,000 for purposes of tabulating an insured's Basic Economic Loss. *Id.* at § 5102(a)(2).

Under the No-Fault Statute, insurers must pay covered individuals First-Party Benefits to reimburse them for their total Basic Economic Loss, except the insurer is to deduct from this total 20% of lost earnings, any amount the insured received in government disability benefit, and the insurance policy deductible. *Id.* at § 5102(b)(1)–(3). In other words, the statute aims to ensure receipt by the insured of benefits of one form or another equal to their entire Basic Economic

6

Loss, accounting for government disability payments as well as insurer-provided medical and lost-wage benefits and policy deductibles.[4]

Though the parties have not materially disagreed about the wage calculation formula used, they have disagreed as to whether this methodology conforms to the requirements of the No-Fault Statute. Pryce's complaint maintains that Progressive's wage calculation formula violates this statute by counting $2,500 in gross wages towards the exhaustion of Progressive's obligation to cover her for $50,000 in Basic Economic Loss. Instead, Pryce contends, the No-Fault Statute authorizes Progressive to count toward her Basic Economic Loss tabulation only $2,000, the maximum amount of lost earnings specified in § 5102(a)(2).

In its motion to dismiss, opposition to class certification, and in the instant summary judgment motions, Progressive has contended that its formula tracks the statute, arguing that New York precedent provides that an insurer must account for "statutory offsets" in determining when an insured has received benefits equal to the insured's Basic Economic Loss. Progressive argues that when an insured person, such as Pryce, claims lost wages of more than $2,500 per month, it must proceed by using a $2,500 monthly wage figure in calculating the offsets it will

---

[4] The No-Fault Statute's provision for a 20% reduction of lost earnings facilitates the aim of accounting for the total Basic Economic Loss an individual suffers by adjusting for the fact that lost wage benefits are not taxed, as would be the actual lost wages an insured person would have earned. *See Kurcsics v. Merchants Mut. Ins. Co.,* 49 N.Y.2d 451, 457 (1980) (explaining the purpose of the 20% deduction of avoiding a "windfall recovery" to injured persons due to tax treatment).

take against the $50,000 policy limit. The reason the offset figure should be $2,500, Progressive contends, is to account for both the $2,000 in monthly maximum lost wage benefits and the 20% deduction from lost earnings specified in § 5102(b). Put another way, Progressive argues it must count $2,500 in lost wage benefits towards Pryce's $50,000 coverage limit in order to actually remit the $2,000 in benefits the statute sets as a benefit cap for higher earners, because $2,500 less 20% is $2,000.[5]

Progressive insists in its summary judgment papers that the legal basis for this approach emanates from the New York Appellate Division's decision in *Normile,* which Progressive characterizes as "holding that statutory offsets under Section 5102(b)(1)-(3) must be added to benefits paid by [a] no-fault carrier to determine when [an] insured has received $50,000 in recoverable benefits for basic economic loss." Def.'s Mem. Supp. Summ. J. at 10, ECF No. 101-1 (citing *Normile v. Allstate Ins. Co.*, 87 A.D.2d 721, 722 (3d Dep't 1982)). Progressive then contends that the New York Court of Appeals in *Kurcsics* held that "when an insured earns more than $2,500, wages are capped at $2,500 in order to ensure that insureds who earn more than $2,500 per month receive the prescribed ceiling of

---

[5] Under its formula, Progressive did not count the full $500 difference towards Pryce's coverage limit, but rather counted 20% of the $2,500 wage less an offset for New York disability benefits, resulting in additional monthly offsets ranging from $350.40 to $391.20. *See* Denny Decl. at ¶ 21.

$2,000 per month." *Id.* (citing *Kurcsics v. Merchs. Mut. Ins. Co.*, 49 N.Y.2d 451, 457 (1980)).

This legal argument is indistinguishable from that previously considered and rejected by Judge Dearie in his orders on the motion to dismiss and for class certification. In *Kurcsics*, decided at a time when the No-Fault Statute capped lost wages at $1,000 per month, an insurer had provided the insured plaintiff, who claimed $1,400 in lost monthly wages, only $800 per month, rather than the $1,000 to which the plaintiff asserted entitlement. 49 N.Y.2d at 455–56. The insurer argued that because First Party Benefits were defined as Basic Economic Loss less 20% of lost earnings, and Basic Economic Loss capped those earnings at $1,000, it was only obliged to remit $1,000 less 20% (i.e., $800) as a lost wage benefit. *Id.* at 456.

The New York State Court of Appeals disagreed, rejecting the insurer's argument that the No-Fault Statute was intended to limit First Party Benefits to $800 per month in this fashion, and instead holding that "it was meant to reduce only actual lost earnings claimed, thereby allowing a maximum of $1,000 [currently $2,000] per month as first-party benefits." *Id.* at 457. Therefore, the Court of Appeals concluded that "an individual is entitled to actual lost earnings claimed less 20%, *unless* such reduced figure exceeds $1,000 [currently $2,000] per month, in which case such person would be entitled to a maximum of $1,000

[currently $2,000] due to the outer net limit imposed." *Id.* at 456–57 (emphasis added).

Progressive's wage calculation formula does not reduce the benefits paid to Pryce in precisely the same improper manner as that of the insurer in *Kurcsics*—i.e., by paying Pryce 20% of $2,000, or $1,600, in lost wage benefits. Progressive's formula is nevertheless squarely at odds with the interpretation of the No-Fault Statute articulated by the Court of Appeals in that decision, for the reasons Judge Dearie has carefully explained. *See* ECF No. 18, at 5–7. Rather than directly reducing Pryce's First Party Benefits like the *Kurcsics* insurer, Progressive's formula improperly reduced Pryce's benefits by prematurely exhausting her $50,000 coverage limit by counting against this limit a greater sum than the $2,000 in lost wage benefits to which Pryce is restricted by the statute.[6] In short, "[t]he No-Fault Statute does not operate to let [Progressive] benefit twice, once by limiting Plaintiff's lost wages benefits to $2,000 per month and again by permitting [Progressive] to offset $500 per month from Plaintiff's maximum First Party Benefits." ECF No. 18, at 5.[7]

---

[6] Progressive is, of course, permitted to deduct from the First Party Benefits remitted to Pryce the types of government disability benefits identified in the No-Fault Statute. *See* N.Y. Ins. Law § 5102(b).

[7] Several other district courts in this circuit have come to identical conclusions as Judge Dearie on this question. *See* Mem. and Order at 6–9, *Lanzillotta v. GEICO Emps. Ins. Co.*, No. 19-CV-1465 (E.D.N.Y. Sept. 30, 2020), ECF No. 23 (following Judge Dearie's interpretation of *Kurcsics* and rejecting insurer's assertion that the No-Fault Statute permits deduction of 20% of $2,500 in

10

Concerning *Normile*, Progressive is correct that in that decision the Appellate Division affirmed that "the statutory setoffs enumerated in [the No-Fault Statute] are to be deducted from basic economic loss up to $50,000." 87 A.D.2d at 721. Progressive is incorrect, however, that it follows from this holding that an insurer may deduct from Basic Economic Loss an additional statutory setoff for higher earners. The No-Fault Statute does not operate to treat as a deductible statutory offset within the meaning of § 5102(b)(1) an amount above the $2,000 monthly wage ceiling specified in § 5102(a)(2). Judge Dearie explained that a contrary interpretation would generate the type of double-dipping described above in which an insurer could benefit twice over, first by the cap on wage benefits in § 5102(a)(2), and then by taking an additional percentage of this already-once-reduced wage figure as an offset. *See* ECF No. 18, at 5–6. Indeed, *Normile* involved a different scenario, in which the plaintiff did *not* earn wages above the $2,000 (at the time, $1,000) ceiling, and thus no such concern was present.

With this interpretation of the No-Fault Statute established, Judge Dearie then certified Pryce's breach-of-contract and GBL § 349 claims. In so certifying the class, Judge Dearie rejected Progressive's argument that Pryce, as class representative, lacked a cognizable injury sufficient to support Article III standing.

---

gross lost wages from coverage limit); *Manrique v. State Farm. Mut. Auto. Ins. Co.*, No. 21-CV-224, 2021 WL 5745717, at *5–6 (S.D.N.Y. Dec. 2, 2021) (same).

11

As Judge Dearie explained, "the breach is predicated not on the amount paid in first party benefits for lost wages in a given month, but on the additional credit toward her PIP coverage limit that Progressive took, and the premature exhaustion of her benefits that occurred as a result." ECF No. 58, at 5 (cleaned up). For much the same reasons, Judge Dearie likewise rejected Progressive's argument that the other putative class members had suffered no injury-in-fact. *Id.* at 7 ("Under Plaintiff's theory of liability, because Progressive has apparently applied the same Basic Economic Loss formula for all policyholders, individuals who meet these criteria were injured when Progressive accelerated its own credits towards the PIP cap preventing the realization of the $50,000 in PIP required by law.").

Judge Dearie then defined the Class in the following fashion, designed to capture all class members who had faced this injury:

> All "Eligible Injured Persons," as that term is defined by 11 NYCRR §§ 65-1.1–65-1.3, covered under a policy of insurance issued or administered by Progressive Casualty Insurance Company, and subject to the provisions of Insurance Law § 5102 who earned gross monthly wages in excess of two thousand dollars per month at any point during the period in which they were covered, who have submitted First Party Benefit claims to, and received payment from, Progressive Casualty Insurance Company for First Party Benefits that included claims for lost wages, and which, after paying at least one month of First Party wage benefits, Progressive Casualty Insurance Company claimed full exhaustion of mandatory $50,000 coverage, whether defined as Personal Injury Protection(PIP), no-fault coverage, or Economic Loss Benefits, on or after March 13, 2013. Excluded from the Class are the defendant company; any entity that has a controlling interest in the defendant company; and any current or former directors, officers and counsel of the defendant company.

12

*Id.* at 20.

Put another way, the Class, which was certified for the breach-of-contract and GBL § 349 claims, comprises all individuals who during the relevant period (1) had no-fault coverage with Progressive, (2) earned gross monthly wages of $2,000 or more while covered, (3) submitted claims to Progressive for benefits that included lost-wage claims, and (4) to whom Progressive claimed full exhaustion of the $50,000 coverage limit after paying at least one month of lost-wage benefits.

Judge Dearie declined, however, to certify a class with respect to Pryce's claim under the No-Fault Statute because liability under that statute does not accrue until a particular benefit is claimed and a payment becomes delinquent. Therefore, once again, Judge Dearie found that "individual issues relating to the existence, timing and amounts of overdue benefits for each class member would predominate." *Id.* at 16.

## II.    The Current Motions

### A.  Summary Judgment Motions on the Class Claims

Pryce now seeks partial summary judgment on liability to the Class with respect to her breach-of-contract and GBL § 349 claims. Progressive has made a competing motion for summary judgment on these claims.

13

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

1.  Breach of Contract

To be liable for a breach of contract, Pryce must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

There is no dispute that a valid insurance agreement between Pryce and Progressive existed at the time of her accident on July 7, 2015. *See* Def.'s Response to Pl.'s Rule 56.1 Statement at ¶ 7. This policy provided $50,000 in no-fault benefits coverage. *See id.* There is likewise no dispute as to the Plaintiff's performance of the contract, i.e., her payment of premiums.

14

Pryce contends that Progressive has breached its insurance contracts with the Class by using its current wage loss formula. Progressive makes several counterarguments. First, Progressive argues there was no breach because its formula comports with the No-Fault Statute. Judge Dearie has already found this to be incorrect, and the Court agrees. Second, Progressive contends that Pryce's motions should be denied and its own motion granted because Pryce has not provided evidence that she or any member of the Class were actually denied any claimed lost wage benefits by operation of Progressive's wage loss formula. *See* Def.'s Mem. in Opp'n, at 9–13, ECF No. 98; Def.'s Mem. in Supp. at 16–17, ECF No. 101-1. Progressive argues that to prevail on the breach-of-contract claim there must be uncontroverted evidence that Progressive "failed to pay an amount owed under the auto insurance policy." ECF No. 98, at 9.

However, this misstates the nature of the alleged breach. The class certification order makes plain that the "relevant injury" is "premature coverage exhaustion." ECF No. 58, at 7. Here, as there, Progressive "confuse[s] the injury alleged as one of lost wages as opposed to premature coverage exhaustion." *Id.* It was precisely in contemplation of this type of breach that Judge Dearie revised the Class definition as he did. *See id.* ("The revised class definition is designed to capture individuals subject to the PIP exhaustion formula at issue[.]").

15

Progressive's contention that a finding of liability requires evidence that it failed to remit payment to Class members under the terms of its contracts simply repeats arguments about how to characterize the breach that were already considered and rejected by Judge Dearie in the class certification order, which explained at length why "Defendant's contentions about wage loss ignore the true source of Pryce's claimed injury," i.e., the premature exhaustion of her PIP coverage. *Id.* at *5.*

The injury at issue, then, is "premature coverage exhaustion." Pryce is entitled to partial summary judgment on liability if there is no material fact in dispute as to whether Progressive's formula entailed Class members' PIP coverage exhausting earlier than it otherwise would have. Each Class member, by definition, had an insurance contract with Progressive. That contract provided that Progressive would cover each Class member's losses in conformity with the No-Fault Statute. This is so because in New York "applicable provisions of the Insurance Law are 'deemed to be part of an insurance contract as though written into it.'" *Trizzano v. Allstate Ins. Co.*, 780 N.Y.S.2d 147, 149 (2d Dep't 2004) (quoting *Salzman v. Prudential Ins. Co.*, 296 N.Y. 273, 277 (1947)) (cleaned up). But, as explained above, Progressive's wage loss formula undisputably contravened the No-Fault Statute, the provisions of which were inherent in the contract. By applying this formula and counting improper, additional statutory offsets towards the exhaustion

16

of Class members' Basic Economic Loss coverage, Progressive necessarily caused the "premature coverage exhaustion" that is the basis of the alleged contract injury.

Class members suffered corresponding damages because of this premature exhaustion. As the class certification order recognized, there may be individualized issues concerning damages, but the fact that Progressive has damaged the Class by prematurely exhausting coverage is not in dispute. *See* ECF No. 58, at 15 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 306 (E.D.N.Y. 2013). To ground liability on this class claim, Pryce need only demonstrate that Class members were damaged by Progressive's breach, which they indisputably were, while discrete issues arising from the calculation of individual damages or claims may be bifurcated. *See Augustin v. Jablonsky*, 461 F.3d 219, 231 (2d Cir. 2006) (explaining the "'management tools available to a district court to address any individualized damages issues,' such as bifurcation" (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 123, 135 (2d Cir. 2001))).

### 2.  GBL §349

GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). To prevail on a claim under this provision Pryce must show that Progressive "engaged in (1) consumer-

17

oriented conduct that is (2) materially misleading and that (3) [she] suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (citing *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009)).

Progressive argues that this allegation must be dismissed because Pryce's claimed injury is the same as that alleged in her breach-of-contract claim: failure to pay benefits on account of premature exhaustion of coverage. Progressive cites Second Circuit precedent providing that "[a]lthough a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Progressive argues that because the monetary loss underlying the alleged GBL § 349 violation is the same loss undergirding the contract allegation, this claim must be dismissed.

In substance, if not in form, Progressive's argument and motion for summary judgment on this claim seek the Court's reconsideration of the prior order certifying the Class with respect to GBL § 349. In general, such reconsideration is a "drastic step" that the Court would typically contemplate only where there had been some significant shift in the factual terrain following certification. *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016); *see also* Newberg on Class Actions § 7:37 (5th ed.). There has been no such

change in the facts here, and Progressive did not previously raise this argument in its motion to dismiss, *see* ECF No. 15, its opposition to Pryce's motion for class certification, *see* ECF Nos. 41-9, 47, or its objections to the class certification Report and Recommendation, *see* ECF No. 53.

Nevertheless, "Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations[.]" *Laurent v. PricewaterhouseCoopers LLP*, 565 F. Supp. 3d 543, 548 (S.D.N.Y. 2021); *see also Oliver v. Am. Express Co.*, No. 19-CV-566, 2024 WL 217711, at *2 (E.D.N.Y. Jan. 19, 2024). In light of the grant of partial summary judgment to Pryce on the breach-of-contract class claim, and that claim's relation to the GBL § 349 claim, the Court will consequently consider Progressive's argument, though Progressive functionally asks for the Court to revisit the certification order.

Pryce addresses *Spagnola*'s holding concerning the relation of breach-of-contract and GBL § 349 claims by citing separate Second Circuit precedent apparently distinguishing *Spagnola* from cases in which "Plaintiff has alleged both a monetary loss stemming from the deceptive practice and the Defendant's failure to deliver contracted-for services." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). However, *Orlander* concerned a plaintiff who alleged that he had purchased a "protection plan" for a computer based on the assurances of the defendant's sales representative that the computer's standard warranty would not

19

fully cover potential problems. Then, when issues arose with the computer, the defendant allegedly failed to fulfill its contractual obligations under the protection plan. In other words, the plaintiff in that case alleged *both* that he would not have bought the plan in the first place but for defendant's misrepresentations, and that the defendant separately failed to perform its obligations under the plan it induced him to purchase. *See id.* at 302 (distinguishing *Spagnola* because plaintiff alleged "*both* a monetary loss stemming from the deceptive practice and the Defendant's failure to deliver contracted-for services" (emphasis added)).

That scenario differs from the one presented here, where the alleged GBL § 349 injury is the same as the contract injury: Progressive's failure to deliver the coverage for which Pryce and the Class contracted. For this reason, other district court judges in the Second Circuit have granted motions to dismiss GBL § 349 claims in analogous cases challenging insurers' wage loss formulas' compliance with the No-Fault Statute. *See Lanzillotta*, slip op. at 10 ("Plaintiff's failure to allege an injury caused by Defendants' allegedly deceptive acts that is independent of the injury caused by Defendants' alleged breach of contract warrants dismissal of Plaintiff's GBL § 349 claim."); *Manrique*, 2021 WL 5745717, at *7 (same). So too here, where the injuries Progressive allegedly caused Class members under each count are not independent, but in either case amount to "premature coverage exhaustion." Furthermore, because there is no suggestion that Progressive willfully

violated the No-Fault Statute, the damages to the Class are congruent. *See* GBL § 349(h).

Accordingly, Pryce's motion for partial summary judgment on Progressive's liability to the Class for breach-of-contract is granted, but the GBL § 349 claim is dismissed. It necessarily follows that both Progressive's motion for summary judgment on the breach-of-contract claim and Pryce's motion for partial summary judgment on the GBL §349 claim are denied.

### B. Summary Judgment Motions on the Individual Claims

As previously explained, Judge Dearie declined to certify a class with respect to Pryce's claim under the No-Fault Statute, leaving that single claim pending for Pryce to pursue as an individual. The No-Fault Statute provides a cause of action for overdue benefits, defined as benefits "not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." N.Y. Ins. Law § 5106(a). Progressive has moved for summary judgment on this claim, arguing that Pryce has not produced evidence of any particular claim for benefits submitted by Pryce following her return to work that Progressive refused to pay and which is now allegedly overdue. Pryce has also conversely moved for partial summary judgment on its liability on this claim.

Even if Pryce were to prevail in showing she had submitted one or more benefit claims that are now overdue, those overdue benefits would be equivalent to

the amount by which Progressive's improper wage calculation formula deprived her of benefits by prematurely exhausting her PIP coverage. Practically speaking, the damages Pryce seeks as an individual on this count are identical to the damages she would receive as a Class member for Progressive's breach-of-contract.

Therefore, judicial economy favors consolidating this individual claim with the certified breach-of-contract claim. The Court will not waste resources by holding a separate trial on Progressive's liability to Pryce as an individual under §5106(a), when liability for breach-of-contract, which provides a like remedy, is already established. The Court thus exercises its authority to consolidate these separate causes of action. *See* Fed. R. Civ. P. 42.

Accordingly, there remains for disposition solely the question of damages and claims administration with respect to Progressive's established liability to the Class for breach-of-contract, which the Court refers to Magistrate Judge Marutollo for resolution. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 123, 141 (2d Cir. 2001) (explaining that "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including . . . appointing a magistrate judge or special master to preside over individual damages proceedings").

## C. *Motion to Exclude Expert Testimony*

While the class definition is firmly established, *see* ECF No. 58, at 20, the parties have competing views concerning the appropriate method for compiling a list of class members and measuring the attendant breach-of-contract damages. Each has produced expert reports on these issues, though Progressive has moved to exclude the expert testimony of Stephen M. Dripps and Chad L. Staller of the Center for Forensic Economic Studies ("CFES"), who have produced two reports proposing an approach to identifying class members and assessing damages.

### 1. Legal Standard

Federal Rule of Evidence 702 requires the Court to serve as a gatekeeper, ensuring the reliability and relevance of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides, in pertinent part, that an expert, qualified by "knowledge, skill, experience, training, or education" may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

23

Fed. R. Evid. 702.

In assessing the reliability of expert testimony, the Court must rigorously examine the facts on which the expert relies, the methodology employed, and application of the facts and method to the case. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). "A minor flaw . . . will not render an expert's opinion *per se* inadmissible, [but rather] '[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). "As the Supreme Court has explained, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## 2.  Discussion

The two CFES Reports prepared by Dripps and Staller and proffered by Pryce set forth methodologies for identifying potential members of the certified class ("Potential Class Plaintiffs"). Dripps is a Senior Economist at CFES, has a Master's degree in Finance from Pennsylvania State University, and is a Certified Valuation Analyst. He has provided testimony at trial or deposition in 10 prior actions. Staller is President of CFES, has an M.B.A. and J.D. from Temple University, and is on the faculty of the L.L.M. in trial advocacy program at Temple

University's law school. He has provided testimony at trial or deposition in dozens of prior actions. Courts have admitted the testimony of CFES experts in numerous prior cases, *see* ECF No. 105 at 5, though Progressive has identified two prior cases in which CFSE experts were disqualified owing to a lack of specificity in the data upon which they relied, *see* ECF No. 104-1, at 3.

Progressive makes several arguments why the testimony and opinions of Dripps, Staller, and CFES should be excluded in this case. Progressive's first argument is that CFES's methodologies are unreliable. For instance, Progressive argues that CFES's method for calculating damages assumes that Progressive offsets limits for the wage claims of any insured person who earns more than $2,5000 by $500 (i.e., 20% of $2,500). In fact, Progressive explains, it first deducts New York State disability payments and then takes the 20% offset. Consequently, since most class members received disability payments, the offset actually taken by Progressive was less than $500. Pryce responds that even if this is so, this method, too, contravenes the No-Fault Statute and so cannot be a basis for excluding its experts attempt to calculate damages.

Progressive's contention about the appropriate method of calculating the actual damages of Potential Class Plaintiffs may be raised and argued as a reason to discount the calculations set forth in the CFES Reports. But it is not a basis to preclude Pryce from presenting the testimony of experts as to their own method for

assessing damages, which is cogent, if contestable. The same holds for

Progressive's arguments that CFES's methodology fails to account for insureds

who have additional PIP coverage, and that the CFES Reports in some instances

mismatch individual claimants and wage rates. *See CA, Inc. v. Appdynamics, Inc.*,

No. 13-CV-2111, 2015 WL 1606638, at *2 (E.D.N.Y. Apr. 8, 2015) ("[A]s the

Federal Circuit has explained, "[w]hen the methodology is sound, and the evidence

relied upon sufficiently related to the case at hand, disputes about the degree of

relevance or accuracy (above this minimum threshold) may go to the testimony's

weight, but not its admissibility." (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598

F.3d 831, 852 (Fed. Cir. 2010)).

Progressive also argues that the Court should exclude the CFES Reports

because they produce "absurd results." Progressive contends that this is

demonstrated by the fact the CFES Reports put forward two methodologies that

produce different numbers of Potential Class Plaintiffs. Pryce responds that the two

CFES Reports do not use two different methodologies, but rather the same

methodology with two different variables to account for the manner in which

Progressive applies statutory offsets. Pryce's explanation is sufficient to allow her

proffered experts to testify as to the reason for employing these two variable

approaches. Additionally, the precedent Progressive cites in support of its argument

that expert testimony based on two methodologies yielding different results should

be excluded involved expert testimony with many additional indicia of unreliability that are not present here. *See Lippe v. Bairnco Corp.*, 99 F. App'x 274, 279 (2d Cir. 2004) (affirming district court decision to exclude testimony where expert did not articulate any basis for a panoply of variables and assumptions underlying methodology).

Progressive separately argues that the CFES Reports should be excluded because their proposed methodologies errantly identify potential damages that would exceed PIP limits by including among the Potential Class Plaintiffs some individuals who were already paid to the full PIP policy limits. Pryce retorts that Progressive's contention is based on the findings of its own expert, Lynn Mitchell, who herself indicates that these discrepancies could be traceable to Progressive's original data set. *See* Report of Lynn A. Mitchell, at ¶ 30, ECF No. 104-6 (acknowledging "incorrectly labeled policy limit in the dataset"). As with Progressive's earlier arguments about the reliability of the CFES Reports, this observation affects the weight, but not ultimate admissibility, of the CFES Reports. *See B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738, 2024 WL 4252031, at *20 (E.D.N.Y. Sept. 20, 2024) (explaining that "[s]ubjective decision-making about which variables to include or how to control for other variables is a daily part of the scientific and statistical process," and objections to reasonable variable selection go to weight, not admissibility).

27

The same distinction holds for Progressive's argument that the CFES Reports should be excluded because Pryce's experts concede that their methodology could not be used to analyze 647 potential class claims. This concession, Progressive argues, suggests that the methodology underlying the Reports is so weak as to render them inadmissible. Pryce counters that the reason these claims could not be examined is because of gaps in the data supplied by Progressive itself. In a similar vein, Progressive argues that CFES "cherry picked" the data used in the CFES Reports because the CFES experts did not use a larger team or algorithmic analysis to try to determine whether the 647 potential claims implicated Potential Class Plaintiffs. Pryce responds that the fault is Progressive's, because the documents Progressive claims the CRES Reports disregard were "dumped" in a disorganized fashion, needlessly obstructing the experts' ability to analyze them. As with Progressive's prior objections, the CFES experts' approach to analyzing the data provided by Progressive goes to weight not admissibility.[8]

Finally, apart from arguing that the CFES Reports are unreliable, Progressive contends they are not relevant, because the reports purport to identify only "potential" class membership and damages. This is not so. The CFES Reports may

---

[8] The Court is cognizant of the issues Progressive's data handling have posed throughout this litigation, as noted by Judge Dearie in the class certification order. *See* ECF No. 58, at 9 ("The Court is especially unmoved by Defendants' demand for the precise number and identity of class members in light of Progressive's apparent practice of not tracking the exhaustion of PIP coverage.").

"help the trier of fact to understand the evidence or to determine a fact in issue," namely the class size and damages. That the CFES Reports deploy only one of many potential approaches to these issues does not render them irrelevant.

In short, Plaintiff's proffered experts appear well-qualified to opine on the material contained in the CFES Reports, which themselves appear based on the reasonable application of reliable methods to the facts available in service of analyzing a highly relevant issue in this case. Progressive's arguments to the contrary may suffice to sway a fact-finder that the conclusions drawn in the CFES Reports should be discounted, but are not grounds to exclude the expert testimony.

### III.    Conclusion

Pryce's motion for partial summary judgment on liability is granted only with respect to the breach-of-contract class claim. Pryce's individual claim is consolidated with this class claim. Progressive's motions for summary judgment are denied as academic. Progressive's motion to exclude expert testimony is denied. The remaining issues of breach-of-contract damages to the Class and claims administration are referred to Magistrate Judge Marutollo.

**SO ORDERED.**

                                                 _/S/ Frederic Block_____
                                                 FREDERIC BLOCK
                                                 Senior United States District Judge

Brooklyn, New York
February 11, 2024